THE PEOPLE OF THE STATE OF NEW YORK ex rel. CITY OF BUFFALO, Relator, against ISIDORE J. MAZUROWSKI et al., as Assessors of the Town of Cheektowaga, Erie County, Respondents.

Supreme Court, Erie County, June 16, 1943.

*Herbert A. Hickman* for relator.

*Kenneth W. Kitzinger* for respondents.

HARRY L. TAYLOR, Official Referee. In this certiorari proceeding, the relator, City of Buffalo, seeks to have vacated and set aside an assessment made in 1942 for the tax of 1943 upon about 550 acres of real property owned by relator and located in the town of Cheektowaga, Erie County, N. Y., and known as the " Buffalo Municipal Airport ". The property including the buildings was assessed at $971,600. Relator claims that the assessment is invalid because the property is exempt from taxation under subdivision 16 of section 4 of the Tax Law and because the premises have long been utilized as a public aviation field under various agreements made and various transactions had by and between relator and the County of Erie and a considerable number of others, natural persons and corporations. Defendants take the position that relator has not proved that the property has been used as a public aviation field by someone other than the City " under agreement with the [municipal] corporation " rather than by the City itself as a private commercial enterprise. The defendants specifically make the several claims that the City cannot have exemption (1) if a lessee of the City makes any profit or makes a sublease to profit-making firms or corporations such as the City's present lessees; (2) unless the aviation field is maintained as a place for experimental and pleasure use only; (3) unless the

field is one serving only airplanes used exclusively in the service of a government or a political subdivision thereof; or (4) unless the field is under exclusive lease to one individual, firm or corporation and operated without profit.

Subdivision 16 of section 4 of the Tax Law reads as follows: " Real property of a municipal corporation not within the corporation which under agreement with the corporation is used for a public park, public aviation field or highway shall be exempt from taxation while so used."

It has been stated as the general rule that one claiming exemption from general taxation assumes the burden of showing that his (or its) right to immunity has been " granted in terms too plain to be mistaken. If there is any doubt as to the intent of the Legislature, it must be resolved in favor of the taxing power." (*County of Herkimer* v. *Village of Herkimer*, 251 App. Div. 126, 127.)

In the instant case exemption is not presumed. It is specifically granted to a municipal corporation under certain conditions set forth. And no greater burden is imposed upon the relator than to show by a fair preponderance of the evidence that those conditions have been met. The intention of the Legislature to encourage the establishment of public aviation fields is manifest. And within the principles set forth in *Matter of Syracuse University* (214 App. Div. 375, 377) the statute in question " should not receive an interpretation so narrow and literal as to defeat or nullify the intention of the Legislature ".

The property in question can be exempt from taxation only (1) while used as a " public aviation field " and (2) " under agreement with the [municipal] corporation." This means so used by someone other than the municipality under agreement between the user or users and the municipality. Unquestionably, the City of Buffalo has made no agreement with any one person or corporation to use or operate the Buffalo Municipal Airport *in toto* as a public aviation field. Is the relator in a position to claim the benefit of the statute because of the various contracts and agreements entered into by the City in its handling of the tract of land involved and because of the practical carrying out of those agreements and the user by the general public of the facilities furnished and utilized by the lessees and the City?

I will first dispose of relator's claim that it receives a benefit from its claimed agreement with the Town of Cheektowaga in 1926. I am not impressed in favor of this claim. The most

that the Town did in the premises was to indicate a possible future attitude or intention. There is a lack of formality fatal to relator's contention that an agreement was entered into.

In and between 1925 and 1929 the relator acquired the Buffalo Trap and Field Club property and some other properties north and south of Phillips Road — all northeasterly of the municipal limits and containing in all 538.28 acres of land — the purpose being initially specified as "for aviation field and recreation park." Between 1926 and June 13, 1942, the City and Town were at loggerheads as to payment of taxes by the City. On June 13, 1942, the City compromised back taxes amounting to $385,447.43 (including interest and penalties) on payment of $72,767.40 and received a deed to the property back from the County of Erie. When an assessment was made against the City on the property in the fall of 1942 the City brought this proceeding.

Between November 18, 1939, and September 19, 1941, relator entered into agreements with various private organizations for the user by them of airport facilities, the flying field, hangars, manufacture of aircraft and parachutes, a restaurant, etc. Some of those organizations are: American Airlines, Inc., flying field, ten years from November 18, 1939; Pennsylvania Central Airlines, flying field, ten years from November 18, 1939; Pennsylvania Central Airlines, hangar No. 5, two years from August 1, 1941; Curtiss-Wright Corporation, flying field, eight years from October 1, 1940; Curtiss-Wright Corporation, hangar No. 6, one year from September 30, 1941; Buffalo Aeronautical Corporation, hangar No. 4 from January 1, 1942 to July 1, 1943; Civil Aeronautical Authority; Works Progress Administration and the Weather Bureau.

The rights and duties of these organizations under their contracts are many. I deem it unnecessary to specify them in detail. Many of these lessees pay substantial rentals and the leases contain covenants by the City to continue to maintain and operate an airport. The agreements also clearly provide that the user granted was one *in common* with others authorized by the City to use the premises. So no exclusive use is granted to any lessee, the interests of the public to use the field when authorized being vouchsafed except as such right of user may be restricted by the needs of our army, navy and air forces for war purposes. The leases to the Federal agencies exact no rental other than levies to cover service charges.

After studying the arguments of counsel — presented at some length and evidently the result of the expenditure of much time and thought — I reach the following conclusions:

I agree that the field is " operated and maintained " by the City. The City so covenants with the lessees in its various leases. These covenants were essential to the lessees in order that their future plans and necessary outlays of money might be served and protected. It simply means that the City shall retain title to the lands and continue to utilize them for aviation purposes and that the City shall make any reasonable expenditures necessary to keep the property in usable condition for the public and for the several lessees for their purposes.

It seems to be the theory of defendants that to obtain the desired exemption the relator should have proceeded as follows or substantially as follows: It should have leased the tract of land to some one person or corporation and its lessee should have " used " the tract by permitting the public — natural persons or corporations — gratis or for a rental paid — to have utilized it for landing, storing and taking off for flights of privately owned planes — for pleasure or for business purposes.

I do not construe the statute thus narrowly. To me the statute means that if the City, as owner, leases the tract either to one or to two or more lessees, all of whom establish equipment and utilize the property in one way or another so that facilities are furnished to the general public for indulging in aviation for pleasure or business — so long as the user by each lessee is in common with authorized usage by all other lessees and in common with authorized user by the public in general — the City may avail itself of the privileges mentioned in subdivision 16 of section 4 of the Tax Law.

The fact that the City " operates " the airport through lessees is not fatal to its contention. (*People ex rel. Mayor, etc., of N. Y.* v. *Assessors,* 111 N. Y. 505, 509–511.)

I do not construe the statute as confining the City to one lessee. Such a narrow construction seems to me unreasonable especially under the language used, viz., " under agreement [not *an* agreement] with the corporation." Although the field is " maintained and operated " by the City in the sense above indicated, it is " used " by the several lessees and also usable by the general public without unreasonable restraint in maintaining a situation such that the public may indulge in aviation for pleasure or business purposes upon territory and under

attendant conditions as up to date and complete as is reasonably possible.

I find nothing in the statute from which it may be inferred that the Legislature in passing it regarded as material the questions whether or not the municipality received an income from a lessee or lessees, or whether the municipality made or lost money in operating the field.

To recapitulate: I have no doubt that the words in the statute, " under agreement with the corporation " cover an agreement between the municipality and either one or more than one natural person or corporation. Minds may differ as to the full significance of the words " public aviation field ". For some years aviation — both for pleasure and business purposes — has been an important adjunct to the full life. It has become of more and more importance as time has gone on.

Of course when the Legislature placed the words " public aviation field " in subdivision 16 of section 4 of the Tax Law in 1926, it could not fully foresee what " aviation " would mean in 1943. But it is my belief that such a group of intelligent men — aware of the marvelous progress which had been made and was being made in the arts and sciences through experimentation and invention — when they placed the words mentioned in a State law, would have had in mind not just a bare field, undeveloped, ill-managed and altogether inadequate, but a field fully equipped in the most modern style in all respects and managed and operated in a way which would furnish the best possible facilities to the public who wished to indulge in aviation.

Such a field, I believe, is the Buffalo Municipal Airport. And — although I do not regard it as a controlling factor — the City is giving excellent service to the public at a financial loss to itself.

An order should enter canceling the assessment in question, with costs and disbursements, against the Town of Cheektowaga.

A report containing findings of fact and conclusions of law may be presented for my signature.