The People ex rel. The Mayor, Aldermen and Commonalty of the City of New York, Respondent, v. The Board of Assessors of the City of Brooklyn et al., Appellants.

The property of a municipality, acquired and held for governmental and public uses, and used for public purposes, is not a taxable subject within the purview of the tax laws, unless specially included.

This exemption does not depend upon the origin of the title of the municipality, or the location of the property, but applies whether it was acquired by purchase or voluntary grant, or as the product of taxation, or whether the property is situated within or without the territorial limits of the municipality.

In proceedings to review by *certiorari* the determination of the Board of Assessors of the city of Brooklyn in assessing for taxation certain premises used as a ferry landing-place, it appeared that the city of New York has occupied by its agents and trustees for two hundred and fifty years, under a conceded title, the said landing-place, and used it for the convenience of the public as an incident to a ferry franchise granted to it. *Held*, that the authority conferred and the duty imposed by the grant of the ferry franchise presupposes the right to acquire what was essential to its operation and to maintain the ferry, and as it could not be operated without a landing on the Brooklyn side, the franchise conjoined with the ownership of the landing, constituted a ferry property belonging to New York, devoted to public use, and so that it was not taxable.

Also, *held*, the fact that the city of New York operates the ferry through lessees and derives revenue from the rental, and not by its own operation of the ferry, did not make the franchise or the landing taxable.

(Argued November 26, 1888; decided December 4, 1888.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, made December 14, 1887, which affirmed an order of Special Term, which set aside and vacated on *certiorari* the decision of the Board of Assessors of the city of Brooklyn in assessing certain premises in said city, owned by the relator and used and occupied as a landing for the Fulton street ferry and leased by it to the Union Ferry Company. (Reported below, 47 Hun, 383.)

The facts, so far as material to the questions discussed, are stated in the opinion.

*Almet F. Jenks* for appellant. If taxable the land is properly taxed in the city of Brooklyn. (*Lake* v. *City of Brooklyn*, 43 Barb. 54 ; *Orr* v. *City of Brooklyn*, 36 N. Y. 661.) The land is taxable. It is not exempted by express statutory terms. (R. S. part 1, tit. 1, chap. 13 ; Laws of 1881, chap. 293.) This property right has been judicially construed, and the property held to be such as is liable to taxation as to the city of New York. (*Dunning* v. *Roerne*, 6 Wend. 655 ; *Britton* v. *Mayor, etc.*, 21 How. Pr. 251 ; *People* v. *Mayor, etc.*, 32 Barb. 102 ; *Benson* v. *Mayor, etc.*, 10 id. 223.) The fact that this land is rented out with the ferry rights does not exclude it from taxation. (*Rochester* v. *Rush*, 80 N. Y. 306, 307 ; *People ex*

*rel.* v. *Forrest,* 97 id. 101.) A municipal corporation may hold property in either one of two capacities. If for the purpose of municipal government, or as necessary and useful for that purpose, it is not taxable; if it is used by the city or enjoyed by it in a social or commercial capacity, or for its own profit, it is taxable. (*Bailey* v. *Mayor, etc.,* 3 Hill, 531; *Lloyd* v. *Mayor, etc.,* 5 N. Y. 369; Cooley on Tax. 173; *Rochester* v. *Rush,* 30 N. Y. 302, 310; *People ex rel. R. R. Co.* v. *Batchelor,* 53 id. 128, 141; Dillon on Mun. Corp. 571; *United States* v. *R. R. Co.,* 17 Wall. 322–332; *Louisville* v. *Comm.,* 1 Duval, 295.) There is no such unity between the ferry franchise and the realty as make an exemption of the franchise from taxation carry exemption to the realty. (*Smith* v. *Mayor, etc.,* 68 N. Y. 552–555; *Benson* v. *Mayor, etc.,* 10 Barb. 223; *People* v. *Mayor, etc.,* 32 id. 102.)

*Frederic A. Ward* for respondent. A municipal corporation is a political body, and as such one of the agencies of government, and is, therefore, exempt from taxation. (Dillon on Munic. Corp. [3d ed.] 614, § 773; Cooley on Taxation, 132, note; *Collector* v. *Day,* 11 Wall. 113; *State* v. *Gaffney,* 34 N. J, Law Rep. 131–133; *U. S.* v. *R. R. Co.,* 17 Wall. 322; *Leonard* v. *City of Brooklyn,* 71 N. Y. 498; *Darlington* v. *Mayor, etc.,* 31 id. 164; *City of Rochester* v. *Town of Rush,* 80 id. 309; *Town of West Hartford* v. *Bd. of Water Comrs.,* 44 Conn. 360; *People* v. *Doe,* 36 Cal. 220; *Worcester County Case,* 116 Mass. 193; *Wayland* v. *County Comrs. of Middlesex,* 4 Gray, 500; 2 Dillon on Munic. Corp. 717, note to § 615 a, *Mayor, etc.,* v. *Bk. of Tennessee,* 1 Swan. 269; *City of Louisville* v. *Comm.,* 1 Duval, 297; *People ex rel. Mills Water Works Co.* v. *Forrest,* 97 N. Y. 97.) The assessed premises are not held by the city of New York as private property. (*U. S.* v. *R. R. Co.,* 17 Wall. 334.) No property of the city of New York can be named, which is more absolutely public in its necessity, nature and uses than the Fulton ferry. (*Benson* v. *Mayor, etc.,* 10 Barb. 245; *Starin* v. *Mayor, etc.,* 106 N. Y. 19; 3 Kent's Com. 458; *Mayor, etc.* v. *Furze,* 3 Hill,

612.) The fact that the ferry is operated by the relator, through their lessees, the Union Ferry Company, for a compensation agreed on, does not change its character and make it private property. (*Benson* v. *Mayor, etc.*, 10 Barb. 223.)

Andrews, J. We deem it unnecessary to examine at length the questions presented by this record in view of the elaborate and satisfactory opinions pronounced at the Special and General Terms, and shall content ourselves with a brief statement of what seem to us controlling considerations which justify and require an affirmance of the orders below.

It is to be taken as a conceded fact that the title to the landing place at the foot of Fulton street, Brooklyn, which is the subject of the assessment, is vested in the mayor, aldermen and commonalty of the city of New York. The tax proceedings are based on this assumption. In what manner or at what precise time the city of New York acquired title, does not appear. The ferry (now known as Fulton ferry), running from this landing place to the city of New York, is recognized in the Dongan charter as in existence when that charter was granted. In the protest of the mayor, aldermen and commonalty of the city of New York, presented to Lord Cornbury in 1707, against granting the petition of one Seberingh for a ferry franchise between Nassau Island and the city, it is alleged that the city of New York had possessed and enjoyed the franchise of operating a ferry between Nassau Island and the city of New York for seventy years prior to that time, and the protest refers to the landing place on Nassau Island, used in connection therewith, locating it at the point where the landing, which is the subject of the tax in question, now is. The commencement of this period of seventy years antedates the Dongan charter nearly fifty years The words of grant of the ferry privilege to the city of New York in the Dongan charter of 1686, and in the Cornbury charter of 1708, and also in the Montgomerie charter of 1730, operated by way of confirmation of existing rights, and were not the foundation of the city's title to the franchise or

the landing place. The city of New York, therefore, under an admitted title, the origin of which is not disclosed, has for a period of two hundred and fifty years, occupied by itself, its agents, or lessees, the present landing place in Brooklyn, and used it for the convenience of the public and as an incident to the ferry franchise.

We think the landing place was not taxable, upon the principle that property of a municipality acquired and held for governmental and public uses, and used for public purposes, is not a taxable subject within the purview of the tax laws, unless specially included. It would probably be competent for the legislature to make the landing place taxable in Brooklyn, but not having done so, in terms or by necessary implication, the power to tax the landing cannot be spelled out from general words, subjecting to taxation all real and personal property within the state. This principle of construction is well settled. It proceeds upon obvious public considerations. There would be manifest incongruity in subjecting to taxation, for public purposes, property dedicated to or acquired under legislative authority for public and governmental use. We do not think that the principle that municipal property, devoted to public uses, is not taxable, unless expressly made so by statute, depends upon the origin of the title, whether acquired by purchase or voluntary grant, or as the product of taxation, nor upon its locality, whether situate within or without the territorial limits of the municipality. These considerations may be important in some cases. We prefer, however, to express no opinion on the question whether there is, in principle, a distinction between taxation of the property of a municipality strictly devoted to public uses, and property which it owns, though not acquired for a public use, although it may be held, on the general trust, applicable to all property of the corporation, but the acquisition or holding of which has no essential connection with the public functions of the municipality. It is conceivable, we suppose, that the city of New York might, in satisfaction of a debt, or upon some other consideration, acquire a building lot in Brooklyn, which was not

and could not be specifically devoted to any public use of the city of New York. The question which would be presented in such a case is quite foreign to the present one. The ferry franchise was conferred for a public use. This is clearly recognized in all the charters. Its acceptance by the city imposed a duty corresponding with the privilege granted. The duty to maintain the ferry could not be performed without a landing place on the Brooklyn side, and authority conferred to maintain the ferry presupposes the right to acquire what was essential to its operation. The one thing is an inseparable incident of the other, and the franchise to maintain the ferry in question, conjoined with the ownership of the landing, constitute together a ferry property belonging to the city, devoted to public use, the revenues from which, by ordinance and statute, are irrevocably pledged for the payment of the public debt. (City Ordinances, art. 6, § 52. subd. 6 ; Laws of 1882, chap. 410, §§ 171, 172.) The supposed hardship to the city of Brooklyn of exempting the landing from taxation while the city bears the burden of maintaining police supervision over it as a part of its territory, if the hardship exists, is an immaterial circumstance. But the city of Brooklyn enjoys compensating advantages in the maintenance of the ferry, and the legislature, following a policy long established, has not subjected the landing to taxation. The fact that the city of New York operates the ferry through lessees and derives its revenues from the rental, and not from the operation of the ferry by its immediate agents and servants, does not make the franchise or the landing taxable. It is to be assumed that the immunity of the property from taxation was in the contemplation of the parties when the lease was made, and was considered by them in fixing its terms. The tax is imposed on the land as the property of the city, and not on the lessees in respect of their interest. Many authorities on the question presented are cited in the opinions below. We refer to a few of them, which we think fully support the conclusions reached. (*Rochester* v. *Town of Rush*, 80 N. Y. 302 ; *King* v. *Inhabitants of Liverpool*, 7 B. & C.

61; *Darlington* v. *Mayor, etc.,* 31 N. Y. 164; Cooley on Taxation, 132, note; *The Mayor, etc.* v. *Furze,* 3 Hill, 612; Dillon on Mun. Corp. [3d ed.] 773, and cases cited.)

The orders of the Special and General Terms should be affirmed.

All concur.

Orders affirmed.