W. Fred Steuart, as Tax Assessor of the City of Tampa,
v. State, ex rel. Luigi Dolcimascolo.

161 So. 378.
Division A.
Opinion Filed April 23, 1935.
Rehearing Denied June 3, 1935.

*Alonzo B. McMullen* and *Ralph A. Marsicano,* for Plaintiff in Error;

*Zewadski & Pierce* and *Sempreviva & D'Arpa,* for Defendant in Error.

Per Curiam.—Mandamus proceedings in the Circuit Court brought in question the proper construction of the

1934 Amendment to the Florida Constitution known as Section 7 of Article X of the Constitution of Florida, which reads as follows:

"Section 7. There shall be exempted from all taxation, other than special assessments for benefits, to every head of a family who is a citizen of and resides in the State of Florida, the homestead as defined in Article X of the Constitution of the State of Florida up to the valuation of $5,000.00; provided, however, that the title· to said homestead may be vested in such head of a family or in his lawful wife residing upon such homestead or in both."

The Circuit Court held that under the language of the amendment an alien who is the head of a family, and who resides on a homestead in the State of Florida, is entitled under said Section of Article X of the Constitution to the stated exemption from taxation on his homestead as therein provided for to be accorded to citizens and residents of Florida.

On writ of error to the Circuit Court's judgment awarding a peremptory writ of mandamus against a tax assessor the plaintiff in error contends that the word "citizen" as it appears in Section 7 of Article X of the Constitution in the phrase "head of a family *who is a citizen of* and resides in the State of Florida," is limited in its meaning to the term "citizen" as that term is employed and defined in and by Section 1 of the Fourteenth Amendment to the United States Constitution, and as that term is likewise employed in Florida's own organic law in Sections 2 and 18 of the Declaration of Rights, as well as in Section 1 of Article XIV of the Constitution of Florida.

The Court is of the opinion that the phrase "citizen of and resides in the State of Florida" was intended to comprehend only such persons as under Section 1 of the Four-

teenth Amendment to the United States Constitution would be entitled to claim citizenship in the State of Florida in addition to residing in the State, and that said Section 7 of Article X of the Constitution of Florida, adopted as an amendment to the Constitution at the General Election held in November, 1934, does not confer upon aliens or non citizens of Florida the tax exemption by that Section conferred only upon the "head of a family who is a citizen of and resides in the State of Florida."

Exemptions from taxation, whether stated in the Constitution or in statutes, are to be construed against the claimant and in favor of the taxing power in cases of doubt. Rast v. Hulvey, 77 Fla. 74. 80 Sou. Rep. 750. Therefore a claim for exemption under Section 7 of Article X of the Constitution is not allowable unless such claim is sustainable under the precise language of that section, which language no department of the state government, whether judicial, legislative or executive, has authority to amend, add to, detract from, or alter, in favor of or against claimants not strictly entitled, or debarred, under the words of the Constitution itself.

Citizens of the State of Florida are those persons who are born or naturalized in the United States, and subject to the jurisdiction thereof, and who reside in the State of Florida; 14th Amendment to U. S. Constitution; and those persons who are declared to be citizens of the State of Florida by the Constitution or statutes of the State of Florida that are not inconsistent with applicable paramount Federal law. See: United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; Twining v. State of New Jersey, 211 U. S. 78, 53 L. Ed. 97, 29 Sup. Ct. Rep. 14.

The Constitution and statutes of the State of Florida do not make anyone a citizen of Florida who is not a citizen

of the United States, residing in the State of Florida. Therefore residents of the State of Florida who are aliens and not citizens of the United States, are not included within the terms of the intendments of Section 7 of Article X of the Constitution adopted in 1934, providing that "There shall be exempted from all taxation other than special assessments for benefits, to every head of a family who is a citizen of and resides in the State of Florida, the homestead as defined in Article X of the Constitution of the State of Florida."

The judgment is reversed with directions to quash the alternative writ and dismiss the proceeding.

WHITFIELD, C. J., and TERRELL, BUFORD, and DAVIS, J. J., concur.

BROWN, J., concurs specially.

ELLIS, J., dissents:

BROWN, J. (concurring specially.)—In view of the fact that this State had not defined "citizenship" otherwise, at the time the homestead exemption amendment was adopted I am inclined to concur in the view that the conclusion reached in the above opinion is correct. But I think it is within the power of a State, if it sees fit to do so, to confer *State* citizenship upon persons other than those who are born or naturalized in the United States; for instance, upon *bona fide* residents of Florida, who are "eligible" to become citizens of the United States. See in this connection Sec. 18 of our Declaration of Rights, and 11 Corpus Juris, 776-777. But this our State has not yet done. So I concur in the conclusion above reached.

ELLIS, P. J. (dissenting).—The construction which the majority of the members of the Court place on the word "citizen" as it appears in Section 7 of Article X of the Constitution adopted at the general election of 1934 may de-

stroy the will of the people as it was expressed at the polls in that election.

To say that the word "citizen" as sued in the Section of the Constitution above mentioned "is limited in its meaning to the term 'citizen' as that term is employed and defined in and by Section 1 of the Fourteenth Amendment to the United States Constitution, and as that term is likewise employed in Florida's own organic law in Sections 2 and 18 of the Declaration of Rights as well as in Section 1 of Article XIV of the Constitution of Florida" is to pervert the meaning of the term as used in Section 7 of Article X, Constitution, and tends to bring the 1934 amendment into conflict with Section 2, Article IV, Constitution of the United States, which provides that "The *Citizens* of each State shall be entitled to all Privileges and Immunities of *Citizens* in the several States." (Italics supplied.)

Such an interpretation of the word is unauthorized and violates a fundamental principle of constitutional law and ignores the fact and the law that in this government of ours there is a distinction between the "citizenship of domicile" and "judicial citizenship," a distinction recognized in the case of United States v. Darnaud, 25 Fed. Cas. (No. 14,918) 754, 3 Wall Jr. 143; Read v. Bertrand, 20 Fed. Cas. (No. 11,601) 345, 4 Was. C. C. 514.

Such construction ignores the rights of a State in virtue of its sovereignty to confer citizenship within its own limits where the rights incident to such a status are not those of the citizenship mentioned in the Federal Constitution. It does not follow that because one has all the rights and privileges of a citizen of a State that he must be a citizen of the United States. Such a distinction has long been recognized in this country. See Scott v. Sandford, 19 How. (U. S.) 393, 15 L. Ed. 691; Mitchell v. Wells, 37 Miss. 235.

The distinction became apparent in the discussion affecting the status of qualification of persons of the African race.

The privileges and immunities guaranteed by the Fourteenth Amendment to the Constitution and which the States are forbidden to abridge or deny are those which depend immediately on the Constitution of the United States which belong to citizens of the United States in that relation and character and which the federal court has jurisdiction to protect and not such rights as accrue from *state citizenship.* Brawner v. Irvin, 169 Fed. Rep. 964; United States v. Moore, 129 Fed. Rep. 630.

The Fourteenth Amendment was not intended to authorize the Federal Government to supervise the State in the exercise of its undoubted powers. People v. Brady, 40 Cal. 198, 6 Am. Rep. 604.

The distinction is clearly made in 11 C. J. under the title of Civil Rights.

The construction adopted by the majority violates, in the interest of those who think the 1934 amendment was unwise, a fundamental rule of construction, which is that a Constitution is to be interpreted by the "spirit which vivifies and not by the letter which killeth." 6 R. C. L. 47.

The term "citizen" as used in the 1934 amendment has no reference to allegiance. It is, as used in the amendment, almost a convertible term with "inhabitant." The term certainly has no implication of political or civil rights. It merely means "permanent resident," an inhabitant of the State. See Webster's International Dictionary.

While the term "citizenship" is not synonymous with "residence," the two words "citizen" and "resides," when combined in the phrase "citizen of and resides in the State

of Florida," convey the idea of permanent residence in Florida—an inhabitant of the State, residing in it.

Such view preserves the amendment from any possible attack by those who wish to destroy it, and who think that it is an unwise provision of constitutional law, and secures to the people of the State the evident purpose of the Amendment. See Wise, Studies in Constitutional Law, Citizenship, 98.