**C. L. SAUNDERS, as Tax Collector of Clay County, Florida, et al, v. CITY OF JACKSONVILLE, a municipal corporation.**

25 So. (2nd) 648

April 2, 1946

Rehearing denied April 24, 1946

January Term, 1946

En Banc

*T. J. Jennings, Jr., J. Tom Watson,* Attorney General, *Fred M. Burns, George M. Powell* and *T. Paine Kelly,* Assistant Attorney General, for petitioners.

*William M. Madison* and *Gov. Hutchinson,* for respondent.

ADAMS, J:

This litigation was begun by the City of Jacksonville by filing a bill pursuant to Sec. 196.01, Fla. Stat., 1941, F.S.A., to enjoin Clay County from collecting an ad valorem tax on the electric light poles and other properties held and used by the City in Clay County to transmit electric power from plaintiff's plant in the City of Jacksonville, located in Duval County, into the adjoining County of Clay.

A motion to dismiss was grounded largely on the theory "that it affirmatively appears that the said property was used for and only for or as a part of the proprietary activities of the said City of Jacksonville outside of and beyond the limits and without the corporate boundaries of the said City." This defense presupposes that Chapter 21985, Acts of 1943, and Sec. 192.06, Fla. Stat., 1941., F.S.A., is either void or is inapplicable to the facts of this case. The chancellor upheld the bill and filed an able opinion which has been helpful to this Court. We are called upon to reiew the order upholding the bill under Rule 34 of this Court.

The question for us to decide is whether the Legislature is authorized under Article 9, Section 1, Constitution of Florida to exempt municipally owned property from taxation

where the property is located and utilized in its proprietary capacity beyond the corporate limits of the municipality.

The relevant part of Article 16, Section 16, Florida Constitution, provides that the property of all corporations shall be subject to taxation unless the property is held and used exclusively for a municipal purpose.

Article 9, Section 1, Fla. Constitution, authorizes the legislature to exempt by law property for municipal purposes. Pursuant to Article 9, Section 1, the Legislature enacted Chapter 21985;

"That the real and personal property of public utilities owned, operated or controlled by any municipality in the State of Florida, situate, lying and being in the county other than the county in which such municipality is located shall not be subject to ad valorem or personal taxes in such county."

See also Sec. 192.06, Fla. State., 1941, F.S.A.

It is conceded by the City that the properties are being held and used by the City in its proprietary capacity, which narrows the question to whether property so held and used may be for a municipal purpose as contemplated by our Constitution.

One of the latest expressions of this Court on the subject of municipal purpose is to the effect: (State ex rel. Harper v. McDavid, 145 Fla. 605, 200 So. 100)

" . . . What constituted a municipal purpose is a legislative question that should not be interfered with by the courts in the absence of a clear abuse of discretion. A municipal purpose is much broader in its scope than it was a generation ago. Under our system of jurisprudence, constitutional validity may be determined by practical operation and effect. Measured by this test, we cannot say that the Legislature exceeded its power in pronouncing the properties of the Housing Authority held for a municipal purpose free from all forms of taxation. They are held not for profit, must be restricted to a low income group, and contribute materially to the health, morals, safety and general welfare of the people. They aid materially in reducing the cost of fire prevention and police protection and the Housing Authority is author-

ized to make annual compensation to the City in lieu of taxes and other services furnished. . . . "

" . . . The time was when a municipal purpose was restricted to police protection or such enterprises as were strictly governmental, but that concept has been very much expanded and a municipal purpose may now comprehend all activities essential to the health, morals, protection and welfare of the municipality. City of Fernandina v. State, (Fla.), 197 So. 454. In State v. City of Tallahassee, 142 Fla. 476, 195 So. 402 we approved the construction of an office building as a proper municipal enterprise and in previous decisions we had approved airports, golf courses, school buildings, and other structures as proper for a city to undertake. . . ."

This case was of sufficient import to gain selection in 133 A.L.R.R. 360. We also cite with approval our opinion, Marvin v. Housing Authority of Jacksonille, 133 Fla. 590, 183 So. 145.

There is no doubt that the furnishing of electric current is a municipal purpose. See Jacksonville Electric Light Company v. City of Jacksonville, et al., 36 Fla. 229, 18 So. 677.

The contention of Clay County then narrows to the claim that the property is not held and issued for the benefit of the inhabitants residing within the corporate limits of the City of Jacksonville. This claim is untenable. Article 8, Section 8, our Constitution gives the legislature power to prescribe the jurisdiction and powers of municipalities and no limitation is found therein which might give aid to the county's claim. The whole scheme and purpose of our municipal law is to render service to the individual in areas where the population is congested. Questions of policy are delegated to the Legislature. That body was doubtless well aware of the need for light, heat and power by those areas outside of municipalities. In granting the exceptions it was clearly within its constitutional power and in so doing it obviously encouraged the extensions of these regarded necessities to the people in adjoining areas.

We may assume that the Legislature was deeply conscious of the desire and need for this service to the people in the adjoining areas. We are not justified in declaring the act in-

valid because it might enable the City to compete with private utilities required to pay taxes.

The exemption inures to the property itself when *held* and *used* for municipal purposes. The Constitution makes no requirement as to its location. If the property serves a municipal purpose to the residents within Jacksonville, then it likewise serves a municipal purpose to the residents outside of Jacksonville. Its character does not change when the power line traverses the city or county line. See Cooley on Taxation, 3rd Ed., page 247.

Smith v. Housing Authority of the City of Daytona Beach, 148 Fla. 195, 3 So. (2nd) 880, is cited to show that the right of exemption is a question of fact. This cause went off on the failure to allege ownership in the housing authority. It is not inconsistent with the rule announced in the other housing authority cases cited earlier in this opinion. State ex rel. Burbridge v. St. John, 143 Fla. 544, 197 So. 131, is cited for the county but this opinion was modified (see 143 Fla. 876, 197 So. 549) and in our opinion does not apply to these facts. City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744, is cited by the county. The distinguishing feature is to be found that there we upheld an excise tax levied upon the gross receipts of the plant. We held in effect that it was not the city that enjoyed the exemption but rather the property owned and used by the city.

It is urged that abuses may arise if the City of Jacksonville is allowed to extend its lines tax free and take business from competing tax paying utilities. Our answer, if any is needed, is that the Legislature is the arbiter of this question and its judgment under Article 8, Section 8, Constitution, is final unless an abuse of power is shown. Furthermore, until some qualified litigant comes into court and shows a discrimination entitling us to strike down the statute we prefer not to invalidate the statute or declare it inoperative for in either event it would disrupt the scheme set up by the policy making department of our government and in so doing would impair the service presently being rendered to the people of Clay County for it is to be supposed that the grant of exemption

from taxes entered into the schedule of rates granted to residents of Clay County.

It is a controlling factor that the owner of the property has no stockholders, or partners, and any income must necessarily accrue to the general public. See Springfield Gas & Electric Company v. City of Springfield, 292, Ill. 236, 257 U. S. 66, 66 L. Ed. 131, 42 Sup. Ct. 24, as cited in Loeb v. City of Jacksonville, 101 Fla. 429, 134 So. 205. If the residents of the area within the city reap all the benefits then not only the county's theory is disproved but the Constitution makes no restrictions as to where the property must be located to enjoy the exemption. The framers of the Constitution intended that property held and used to afford municipal benefits were to benefit all the residents who might have access to them regardless of residence within the area of the city. Article 8, Section 8, makes the Legislature the judge of the jurisdiction and powers of the city. If, by being tax free, the residents of Clay County are rewarded by a lower rate, then there is a municipal benefit accruing to them. Reverting to the supposition that the residents of the corporate area alone reap the benefits, it has been held that this would not warrant invalidating the statute. See A. & M. Consolidated Independent School Dist. v. City of Bryan, 143 Texas 348, 184 S.W. (2nd) 914, wherein it was held that where the claim for exemption was dependent upon the property being used for a *public* purpose, (it was not essential that it be shown to be used as a *governmental* purpose.) In other words, the exemption attached if the property was held and used for the health, comfort and welfare of the public. In the latter case the Court said:

"The plaintiff does not contend that the right to the exemption be denied because the property is located outside the boundaries of the municipality claiming the exemption, but it does contend that in order to be entitled to the exemption the property must be devoted primarily to serving the inhabitants of such municipality; and since the property here involved is devoted exclusively to serving those who reside outside the limits of the city the exception should not be allowed. We are not in accord with this view. The City of Bryan was expressly authorized to construct and operate

electric lighting plants inside or outside its boundaries and to sell and deliver current to persons or corporations outside the limits of such city."

People v. Board of Assessors of Brooklyn, 111 N. Y. 505, 19 N. E. 90, 2 L.R.A. 148, was a case where a lot situated wholly within the City of Brooklyn was owned by the City of New York and used by the latter as a landing for a ferry, which ferry was owned by the City of New York and operated by it between Brooklyn and New York City. The City of Brooklyn attempted to levy a tax on the lot. The court held that the lot was public property used by the public and subject to exemption by the legislature of that state.

Many of our cases are cited to show that when a City exercises proprietary functions it incurs responsibilities for torts as any private agency, nevertheless the controlling fact remains that in the exercise of these functions a municipal purpose is exercised and the exemption attaches. McQuillan on Municipal Corporations, Second Edition, Revised Volume 3, Section 1264, page 1078 and City of Traverse City v. Township of Blair, 190 Mich., 313, 157 N.W. 81.

With few exceptions the courts hold that the exemption applies even where the utility lines extend beyond the city limits and come in competition with privately owned utilities. State ex rel. Becker v. Smith, 144 Kan. 570, 61 Pac. (2nd) 897; Chadwick v. City of Crawfordsville, 216 Ind. 399, 24 N.E. (2nd) 937, 129 A.L.R. 469..

Many of our opinions have been cited to sustain the principle that exemptions from taxes are frowned upon and each claim should be strictly construed. This rule does not apply where the question is raised by a municipality asserting the exemption by virtue of a statute duly passed pursuant to the Constitution. In the latter case exemption is the rule and taxation is the exception. City of Eugene v. Keeney, 134 Ore. 393, 293 Pac. 924. This is another way of applying the rule that in testing the validity of statute it is presumed to be good and in construing the Constitution it should not be read through smoked glasses.

From a study of the three provisions of the Constitution cited above our conclusion is that the statute granting the

exemption is valid and applicable, hence the decree appealed from is correct. The effect of a contrary conclusion would render all property held and used by municipalities in their proprietary capacities subject to taxation and would result in disrupting the long established status of municipalities throughout the state.

For the reasons stated certiorari is denied.

TERRELL, THOMAS and SEBRING, JJ., concur.

CHAPMAN, C. J., BROWN and BUFORD, JJ., dissent.

CHAPMAN, C. J., dissenting.

A bill of complaint was filed in the Circuit Court of Clay County, Florida, by the City of Jacksonville against C. L. Saunders, as Tax Collector, and Mrs. Claude Smith, as Acting Tax Assessor, of Clay County, and J. M. Lee, as State Comptroller. The bill alleged the ownership of property by said city situated in Clay County consisting of poles, cross arms, transformers and wires used in the distribution of electricity from its light plant situated in the City of Jacksonville to its various customers then residing in Clay County. That the property was used by the city in the performance of one of its municipal functions, to-wit, the generation and sale of electric current to its customers in the City of Jacksonville and adjacent Counties pursuant to its charter powers.

It was alleged that its property situated in Clay County was by the taxing oficials for the year 1944 unlawfully assessed in the sum of $644.86. That said amount has not been paid by the City because the property for the year 1944, as well as prior and subsequent years, was and is by law exempt from taxation by the Clay County taxing authorities. The Tax Collector of Clay County, on June 20, 1945, issued a warrant for the collection of said sum and placed it in the hands of the Sheriff of Duval County for the enforcement of payment, and the sale of the City's property is threatened under this process. Immunity of described property from taxation, it is alleged, is sustained by (a) Charter provisions of the municipality; (b) Chapter 21985, Acts of 1943, Laws of Florida; (c) Section 1 of Article 9 of the Fla. Const.; (d) Section 16 of Article 16 of Fla. Const.; and (e) the adjudi-

cated cases of this Court. A motion to dismiss the bill of complaint, as amended, on several grounds (one being for the want of equity) was denied under date of September 14, 1945. This order, it is contended here, was erroneous.

Presented to this Court for adjudication by the allegation of the bill of complaint as amended and inferences deducible therefrom is the following question viz: Are the poles, cross arms, transformers, wires and other appliances composing the electric transmission lines of the respondent as situated in Clay County, and by it employed to transmit electricity from its generating plant in Jacksonville to its customers in Clay County, exempt from paying an ad valorem tax on its property situated in Clay County? It is the respondent's contention that under the charter of the municipality, designated provisions of our Constitution, Chaper 21985, Acts of 1943, and decisions of this Court, the City of Jacksonville is exempt from the levy and payment of an ad valorem tax on said property, while the petitioners contend that the respondent, by the sale and delivery of electric current by the City of Jacksonville over its transmission system to its customers in Clay County, does so in a corporate or proprietary capacity, as distinguished from governmental, and for gain and profit, thereby becoming a potential competitor of others similarly engaged in the same area and now paying ad valorem taxes, and for these reasons the City of Jacksonville when transacting business in its proprietary capacity is governed by the same laws as private corporations and therefore not exempt from the levy and payment of ad valorem taxes.

The case of Smith v. Housing Authority of the City of Daytona Beach, 148 Fla. 195, 3 So. (2nd) 880, involved the question as presented in the case at bar, and we in part said:

" . . . the substance of the entire bill so far as it refers to the basis for exemption, the pleader having proceeded on the theory that ownership by the housing authority was all that need be shown to support a claim of exemption. The fallacy of such a position is apparent upon an examination and comparison of Sec. 1 of Art. IX and Sec. 16 of Art. XVI of the Constitution. Under the former power is given to the Legislature to exempt property for municipal purposes but the

latter contains the mandatory provision that 'the property of all corporations . . . shall be subject to taxation unless such property be held and used exclusively for . . . municipal . . . purposes.' It is patent, therefore, that the exception in the organic law relating to the taxation of corporate property must be established as a matter of fact and is not one of legislative definition."

In the case of State ex rel. The Cragor Co. v. Doss, 150 Fla. 486, 8 So. (2nd) 15, we held that the right to exemption from taxation is determined by the use the property is put to and not by the character of the corporate owner. If the property is held and rented for speculation or commercial purposes and the rents diverted to other than the use stated in the Constitution, then the exemption from taxation would not apply.

In State ex rel. Miller v. Doss, 146 Fla. 752, 2 So. (2nd) 303, we held that the corporate character of a corporation does not determine whether it is exempt from taxation under Section 16 of Article 16, but the use of the property on which the exemption is claimed. In this case a four-story building was owned as a medical center, a non-profit corporation, three floors of which were used exclusively for charity, while the first floor (containing business places) was rented and the rents paid to the medical center and used in the operation of the hospital, and these rents were held not exempt from taxation. Exemptions from taxation are special favors frowned upon by the court.

In the case of State ex rel. Burbridge v. St. John, 143 Fla. 544, 197 So. 131, we held that the governmental functions and property of a municipality shall not be taxed; our Constitution does not exempt the corporate business or proprietary activities of municipalities, such as the generation and sale of electricity, from taxation; that the Constitution exempts from taxation not municipal corporations as such, but property that is held and used exclusively by them for municipal purposes.

In Chardkoff Junk Co. v. City of Tampa, 102 Fla. 501, 135 So. 457, we held that a municipal corporation in its private or quasi-private capacity enjoys the powers and privileges

conferred for its own benefit. In a proprietary capacity, as distinguished from governmental, it is held to the same standards of just dealing that the law prescribes for private individuals and corporations. In Hamler v. City of Jacksonville, 97 Fla. 807, 122 So. 220, we held that the City of Jacksonville, in supplying electric current to its customers, was acting in a proprietary corporate capacity, as distinguished from governmental, and was therefore governed by the same laws and may exercise the same rights of a private corporation engaged in a similar undertaking.

The case of City of Lakeland v. Amos, 106 Fla. 873, 143 So. 744, involved a statute imposing a tax upon all corporations, firms and individuals receiving payment for electricity for lights. It was contended that the tax levied by the City was inapplicable to municipal corporations. We held that when a Florida municipality furnished electricity or gas to private parties, or for non-governmental use, the supply thereof is not a governmental function but a corporate business or activity, and subject to control and regulation as private corporations similarly engaged. It is generally recognized that in the operation of a public utility the municipality acts in the capacity of a private corporation and is therefore subject to all liabilities, regulations and limitations imposed by law on all other corporations transacting a public utility business. See Hamler v. City of Jacksonville, 97 Fla. 807, 122 So. 22; Loeb v. City of Jacksonville, 101 Fla. 429, 134 So. 205; Chardkoff Junk Co. v. City of Tampa, 102 Fla. 501, 134 So. 205.

Our study of the adjudicated cases from other jurisdictions discloses that the former rulings of this Court are in line with the general weight of authority on the question presented. See 18 Am. Jur. 432, par. 32; 24 Am. Jur. 704-05, par. 66; 37 Am. Jur. 729, par. 115, and authorities cited in footnotes 19 R.C.L. 697; 43 C.J. par. 69, 178-183; City of Longansport v. Public Service Commission, 202 Ind. 523, 177 N.E. 249, 76 A.L.R. 838; City of Chicago v. Ames, 365 Ill. 529, 7 N.E. (2nd) 294, 109 A.L.R. 1509.

Counsel for respondent contend that its distribution system situated in Clay County is exempt as a matter of law

from taxation under Section 1 of Article 9 and Section 16 of Article 16 of our Constitution because the supply of electricity to its customers in Clay County is limited solely to a municipal purpose and within the constitutional limitations *supra*. This position is fortified further by citing designated provisions of its Charter—enacted under Section 8 of Article 8 of the Constitution—and Subsection 2 of Chapter 21985, Laws of Florida., Acts of 1943.

The case of Steuart v. State ex rel. Dolcimascolo, 119 Fla. 117, 161 So. 378, involved the application of the homestead exemption to the head of a family residing in Florida. We held that exemptions from taxation, whether stated in our Constitution or in a statute, are to be construed against the claimant and in favor of the taxing power in cases of doubt. An exemption is not allowable unless such claim is sustainable under the precise language of the Constitution. See Rast v. Hulvey, 77 Fla. 74, 80 So. 750. Exemptions from taxation are strictly construed and the property claimed to be exempt must be clearly within the Constitution. See Wolfson v. Heins, 149 Fla. 499, 6 So. (2nd) 858.

Generally all property owned is subject to taxation for the support, maintenance and efficiency of government from which it receives protection. Tax exemptions, being in the nature of special privileges or immunities, must be strictly construed in favor of the sovereign in order to confine them to the limitations of our Constitution. Courts view with disfavor tax exemption claims which will be disallowed unless it has been clearly made to appear they are for a purpose recognized by our Constitution and Statutes as being exempt from taxation. See The Miami Battlecreek v. Lummus, 140 Fla. 718, 192 So. 211.

The Legislature has the power to enact laws—subject at all times to the limitations enumerated and contained in our State and Federal Constitutions. Our Constitution is not a grant of power to the Legislature but a limitation on legislative power and all legislative enactments must conform to the requirements of the Constitution. See Neisel v. Moran, 80 Fla. 98, 85 So. 346. The Legislature may not enact a statute defeating the purpose of constitutional provisions prescribing

the manner of doing an act. See Weinberger v. Board of Publ. Inst. 93 Fla. 470, 112 So. 253.

Subsection (2) of Section 192.06, Fla. Stats. 1941 (FSA), exempts from taxation all public property of the several counties, cities, villages, towns and school districts in this State used or intended to be used for public purposes. Section 1 of Chapter 21985, *supra,* provides that the real estate and personal property of public utilities, owned and operated or controlled by a municipality in the State of Florida situated, lying and being in the County other than the County in which said municipality is located shall not be subject to ad valorem or personal taxes in such County. The latter Act in effect provides that real and personal property of utilities owned . . . by municipalities situated in a county other than the county in which the municipality is located shall not be subject to ad valorem or personal taxes in such county. Section 16 of Article 16 in effect is that the property of all corporations shall be subject to taxation, unless it be held and used exclusively for religious, scientific, municipal, educational, literary, or charitable purposes.

Section 1 of Article 9 of the Constitution in effect is that the Legislature shall provide for a uniform and equal rate of taxation . . . and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempt by law for municipal, educational, literary, scientific, religious or charitable purposes. The property in the case at bar must be shown to be held and used exclusively for municipal purposes. This burden, under our cited decisions, was on the respondents in the lower court.

The governmental functions or services supplied the inhabitants of the City of Jacksonville in the construction of an electric distribution system into Clay County and delivery of current to its several customers there situated is dificult to appreciate. The burden of proof rests on the city under the law to establish that the city "holds and uses" the distribution system in the delivery of electricity "exclusively for . . . municipal purposes." If respondent's contention is sound, it could extend its distribution system into each of the sixty-

seven counties of Florida and supply all the people of Florida with electricity and remain exempt from taxation in either of the several Counties, on the theory that such act was a governmental function of the municipality.

Under the general rule that taxation can only be for public purposes, it has been held that the buying and selling of commodities of general trade was not a public service, without regard to how essential the business might be to the welfare of the inhabitants, and that a municipality could not engage in such business. Some courts have gone so far as to hold that in the exercise of its business powers, the municipality, acting through its officers, is governed by the same rules which control private individuals or business corporations under like circumstances. As a general rule a municipality has not implied power to engage in private business or a business not rendering a public service. See McQuillin on Municipal Corporations, Vol. 5 (2 ed.) 100-109, par. 1952-1960; McRae v. Concord, 296 Mass. 394, 6 N.E. (2nd) 366, 108 A.L.R. 1450, and cited annotations; Cooley on Taxation, Vol. 2 (4th ed.) 1336-1339, par. 638; City of Knoxville v. Park City, 130 Tenn. 626, 172 S.W. 286.

It is our conclusion that the allegations of the bill of complaint, as amended, and inferences deductible therefrom, admitted to be true when heard on the motion to dismiss, establishes the fact that the City of Jacksonville was delivering the current to its customers in a proprietary capacity as distinguished from a governmental function and therefore not exempt from taxation under cited provisions of the Constitution, Statutes and its Charter.

I think the petition for an interlocutory writ of certiorari should be granted.

BROWN and BUFORD, JJ., concur.