614 So.2d 612 (1993)
James NORTHCUTT, Brevard County Tax Collector and Jim Ford, Brevard County Property Appraiser, Appellants,
v.
ORLANDO UTILITIES COMMISSION, etc., et al., Appellees.
Nos. 92-539, 92-677.
District Court of Appeal of Florida, Fifth District.
February 19, 1993.
*613 Frank J. Griffith, Jr. of Cianfrogna, Telfer, Reda & Faherty, P.A., Titusville, for appellant James Northcutt.
Joe Teague Caruso, Merritt Island, and Larry E. Levy, Tallahassee, for appellant Jim Ford.
Thomas B. Tart, Orlando, Steven R. Bechtel of Mateer, Harbert & Bates, P.A., Orlando, and Leon H. Handley and Robert S. Green of Gurney & Handley, P.A., Orlando, for appellees.
DIAMANTIS, Judge.
Appellants Jim Ford, Brevard County Property Appraiser and James Northcutt, Brevard County Tax Collector, appeal from a final judgment which held that the Indian River Plant owned by appellee Orlando Utilities Commission (OUC) is constitutionally exempt from taxation even though the plant does not provide any electricity to Brevard County residents but instead, provides most of its electricity to residents of Orange County with the remainder to private utilities.[1] We affirm the trial court's judgment; however, due to the importance of this issue, we certify this matter to the Florida Supreme Court.
Jim Ford, the Brevard County Property Appraiser, included certain properties owned by OUC but located in Brevard County on the assessment rolls of Brevard County for the tax year 1989. These properties, *614 known collectively as the Indian River Plant, include certain real property on which is located an electrical generating and transmission plant, real estate consisting of a transmission corridor and buffer zone which runs from its generating/transmission facility to the Brevard County/Orange County line, and tangible personal property consisting of towers and transmission lines located on the transmission corridor to the county line. It is undisputed that the Indian River Plant does not provide any electricity to Brevard County, but instead, provides most of its services to residents of Orange County and the remainder to private utility companies.
OUC challenged the assessments and appeared before the Brevard County Property Appraisal Adjustment Board to seek an exemption for the property. In support of its claim of exemption, OUC relied upon Article VII, section 3 of the Florida Constitution[2] and section 196.199(1)(c) of the Florida Statutes (1991).[3] The Brevard County Property Appraisal Adjustment Board ruled with the property appraiser. OUC then sought declaratory and injunctive relief in the circuit court, claiming that the Indian River Plant is constitutionally exempt from ad valorem taxation. The trial court agreed with OUC's position and entered final judgment in favor of OUC.
On appeal appellants mainly contend that OUC's Indian River Plant is not used exclusively for municipal purposes as required by Article VII, section 3 of the Florida Constitution because the Indian River Plant only serves residents of Orange County and not Brevard County and, therefore, there is no municipal or public benefit to the residents of Brevard County. Appellants further contend that OUC's Indian River Plant is not used exclusively for municipal purposes inasmuch as OUC derives approximately 16-17 percent of its gross revenues from the sale of electricity to privately owned investor utilities. Appellants also argue that if we uphold the trial court's judgment, then the tax burden on Orange County's residents will be reduced at the expense of the residents of Brevard County.
Article VII, section 3 of the Florida Constitution states that "[a]ll property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation." Section 196.199(1)(c) of the Florida Statutes specifically provides that "[a]ll property of ... municipalities of this state ... which is used for governmental, municipal, or public purposes shall be exempt from ad valorem taxation." The parties agree that the Indian River Plant constitutes "property owned by a municipality".[4] The evidence at trial established that the Indian River Plant is used exclusively for generating electricity. It is generally recognized that the furnishing of electricity constitutes a municipal *615 purpose. See Gwin v. City of Tallahassee, 132 So.2d 273, 274 (Fla. 1961); Saunders v. City of Jacksonville, 157 Fla. 240, 25 So.2d 648, 650 (1946). See also Jacksonville Electric Light Co. v. City of Jacksonville, 36 Fla. 229, 18 So. 677 (1895); Orlando Utilities Commission v. Milligan, 229 So.2d 262 (Fla. 4th DCA 1969) cert. denied, 237 So.2d 539 (Fla. 1970).
We shall first address appellants' main contention that the plant does not qualify for the exemption because it only furnishes electricity to Orange County (not to Brevard County) and that such use does not constitute a municipal purpose. To support this contention appellants cite to Article VIII, section 2 of the Constitution which states that the "exercise of extra-territorial powers by municipalities shall be as provided by general or special law." Here, the legislature enacted a statute specifically authorizing OUC:
... to acquire, construct and/or operate electric plants and lines and incidental facilities within the boundaries of Orange and Brevard Counties ... to furnish electricity, power and water in any part of Orange County; provided that said Commission shall not serve any consumer outside of Orange County except its own facilities or employees on property controlled by said Commission or the City of Orlando... and authorizing the Orlando Utilities Commission and the City of Orlando to do any acts necessary or required to effectuate said provisions.
Chap. 61-2589 Laws of Fla.
Thus, the issue becomes whether operation of the plant constitutes a municipal purpose. Appellants maintain that in order for the operation of municipally owned property which is located in another county to constitute a municipal purpose there must be specific statutory authority conferring power upon the municipality to provide a public service to the residents of such county. Extending this argument to the instant case, appellants argue that because there is no specific statute authorizing OUC to provide electrical service to the residents of Brevard County, the operation of the power plant does not constitute a municipal purpose. Appellants cite no case law which directly supports this claim; however, in other jurisdictions, case law supports the conclusion reached by the trial court that the furnishing of electricity in Brevard County for the sole benefit of the residents of Orange County constitutes a municipal purpose.
In Traverse City v. Blair Township, 190 Mich. 313, 157 N.W. 81 (1916) the supreme court of Michigan reviewed a case with facts similar to the instant case. There, Traverse City brought an action to recover taxes paid under protest which had been assessed against its electric light and power plant located within the territorial confines of Blair Township. Traverse City purchased the electric plant from the Queen City Electric Light and Power Company. At the time of the purchase 60 acres of the land was located in Blair Township where it had constructed a dam, storage pond, and power plant, which was used for the purpose of generating electricity and furnishing light and power to the City of Traverse and its inhabitants. The city had claimed an exemption pursuant to state statute exempting from taxation "lands owned by any county, township, city, village or school district and buildings thereon used for public purposes." Blair Township argued that the exemption does not, and was not, intended to apply to property owned by a municipality located outside of its territorial limits which, without any compensating benefits, would unfairly lessen the taxable property of one municipality for the benefit of another. In addressing this argument the court stated that "the earnest argument made against the unfairness and the unjustness of such a law is more properly for consideration of the legislature than of the court." Id. 157 N.W. at 83. The court further reasoned:
The right of the legislature either to tax or exempt such public property is not open to question. Whatever views may be entertained upon this contention, the judiciary has no general authority to correct the unjustness of the legislative action in matters of taxation, and the weight of authority clearly is that, as regards to these cases, the determination *616 of the legislature is conclusive. Cooley on Taxation (3d Ed.) p. 247. The exempting language of the general statutory provision is plain, without distinction as to location, and we find no rule of construction authorizing the court to read into the act any exceptions based on territorial boundaries. As it reads it clearly applies to such public property used for public purposes wheresoever located.
Traverse City v. Blair Township, 157 N.W. at 84.
In Town of Hamden v. City of New Haven, 91 Conn. 589, 101 A. 11 (1917), the Town of Hamden sued to recover taxes for land located within its borders but owned and operated by the adjacent Town of New Haven. The property was being used to operate poorhouses and farms for paupers. The Connecticut statutes exempted from taxation all property held by municipalities for public use. The Town of New Haven claimed that the land was exempt from taxation because it was being used for public purposes only. The Town of Hamden responded that such use did not constitute a public purpose because it rendered no benefit to the Town of Hamden and that the application of an exemption would, in effect, compel Hamden to share the support of New Haven's paupers. The Supreme Court of Connecticut rejected this argument, concluding that the maintenance of poorhouses constitutes a public purpose and, therefore, the exemption applies. The Court stated the rule as follows:
And this rule obtains, although the property belonging to one town is located in another town which claimed the right to tax it. In either case the property will be exempt when it is used for, or employed in a public use. The devotion of the property to a public use is the sole ground of the exemption.
Id., 101 A. at 12. In closing, the Court noted that any injustice occasioned by application of the exemption must be addressed by the legislature. Town of Hamden, 101 A. at 13.
As in these cases, here there appears to be an inequity resulting from the fact that OUC is permitted to operate its plant in Brevard County without furnishing any benefit (tax revenues or electrical service) to the residents there. The trial court recognized this concern but noted that Article VII section 3 of the constitution specifically provides a means for relief:
A municipality owning property outside the municipality may be required by general law to make payment to the taxing unit in which the property is located.
Art VII, § 3 Fla. Const. In his commentary to this section of the constitution Sandy D'Alemberte explains that if municipally owned property is not located within the city, the legislature may require the municipality to make payment to the taxing unit in which the property is located. The payment is not further defined and is, therefore, not necessarily a tax, ad valorem or otherwise. 26A Fla. Stat. Ann. 42 (1970) (commentary by Talbot "Sandy" D'Alemberte).[5]
Appellants also rely on two Florida Supreme Court cases which they claim support their contention that Article VII section 3 limits the application of the exemption to instances where the municipal use benefits the county in which the property is located. Review of these cases reveals that such reliance is misplaced and we *617 agree with the trial court's conclusion that these cases support OUC's position.
Appellants first cite to Saunders v. City of Jacksonville, 157 Fla. 240, 25 So.2d 648 (1946). In that case Jacksonville sought to enjoin Clay County from collecting ad valorem taxes on property owned by Jacksonville but located in Clay County. This property was used to transmit electric power from a plant in Duval County into Clay County. The question for the court to decide was whether the constitutional exemption for municipally owned property applied even though Jacksonville's municipal use (production of electricity) was benefiting residents in another county (Clay County). In concluding that the exemption did apply, the court reasoned:
The exemption inures to the property itself when held and used for municipal purposes. The constitution makes no requirement as to its location. If the property serves a municipal purpose to the residents within Jacksonville then it likewise serves a municipal purpose to the residents outside of Jacksonville. Its character does not change when the powerline traverses the city or county line.
Id., 25 So.2d at 650. (Emphasis in original). The court addressed the argument that to interpret the exemption in this manner would permit Jacksonville to abuse the exemption:
It is urged that abuses may arise in that if the City of Jacksonville is allowed to extend its lines tax-free and take business from competing tax-paying utilities. Our answer, if any is needed, is that the legislature is the arbiter of this question and its judgment under [the constitution] is final unless an abuse of power is shown.
Saunders, 25 So.2d at 650.
Appellants also cite to the case of Gwin v. City of Tallahassee, 132 So.2d 273 (Fla. 1961). In Gwin the supreme court reviewed an order declaring null and void certain tax assessments levied by the tax assessor of Wakulla County against the electric generating plant and transmission and distribution lines of the City of Tallahassee. The City of Tallahassee had been legislatively authorized to supply utility service to residents outside the county and so in 1934 the City extended its electrical distribution lines into Wakulla County for the purpose of supplying electrical energy for light and power to that community. The City later acquired a tract of land in Wakulla County and constructed a generating plant on the land for the purpose of furnishing electricity to Tallahassee as well as to residents in Wakulla County. In rejecting Wakulla County's claim that the land was subject to ad valorem taxation the court reiterated the language set forth in Saunders:
The exemption inures to the property itself when held and used for municipal purposes. The constitution makes no requirement as to its location.

Gwin, 132 So.2d at 276. (Emphasis added).[6]
Appellants further contend that the trial court's ruling should be reversed because *618 the Indian River Plant is not used exclusively for municipal purposes inasmuch as OUC derives 16-17 percent of its gross revenues from the sale of electricity to private utilities. We disagree.
Article VII, section 3 of the Constitution states that in order to qualify for the exemption the property must be owned by a municipality and used "exclusively" by it for municipal or public purposes. The term "exclusively" in this constitutional provision modifies the preceding verb "used" and its object "public purposes" (i.e., "used exclusively for public purposes"). Dade County v. Pan American World Airways, Inc., 275 So.2d 505, 512 (Fla. 1973). Thus, in order to determine whether the property is used "exclusively for public purposes", it must be determined first whether the facility is operating to promote a public purpose and, if so, then whether the property is used exclusively for that public purpose. Id.
Here, as we have noted, the Indian River Plant is being used exclusively for the production and supplying of electricity and that such production and supplying constitutes a municipal purpose. Thus, the incidental sale of 16-17 percent of OUC's electricity does not detract from the property's use for public purposes.[7]See Dade County v. Pan American World Airways, 275 So.2d 505 (Fla. 1973) (where airport facility, portions of which were leased by county to commercial airline, was used for a public purpose, incidental private purpose of profit-making venture by commercial airline had merged into meaning of term "public purpose", and, therefore, property leased to airline was being used "exclusively" for public purposes within provision of constitution governing tax exemptions); Daytona Beach Racing and Recreation Facility District v. Paul, 179 So.2d 349 (Fla. 1965) (public purpose of speedway facility authorized by legislature was found primarily upon existence and successful operation of racing facility itself as community asset and revising of lease whereby racing and recreational facility rights to facility were reduced to three-month period each year with further provision that the speedway corporation could, if it desired, preempt the three months for speedway racing did not detract from predominantly public purpose so as to cause loss of tax exemption);[8]Gate City Garage, Inc. v. City of Jacksonville, 66 So.2d 653 (Fla. 1953) (city constructing and leasing a filling station on a large parking lot for private purposes was merely incidental to the prime purpose being to acquire and construct a parking lot to serve a public and municipal purpose in an eminent domain proceeding). See also City of Tampa v. Walden, 323 So.2d 58 (Fla. 2d DCA 1975).
Appellants finally argue that if this court upholds the exemption, then the tax burden of Orange County's residents will be reduced at the expense of Brevard County's residents and that this result is contrary to the public policy that each local government entity must pay its own way and not receive benefits at the expense of another local governmental unit. See generally City of Sarasota v. Mikos, 374 So.2d 458, 461 (Fla. 1979). As the trial court did, we recognize the arguable inequity in allowing a municipality to operate in another county without being subject to that county's taxing authority. However, as we have previously pointed out, Article VII section 3 of *619 the Florida Constitution provides that a municipality may be required by general law to make payment to the taxing unit in which the property is located. Consequently, we conclude that appellants' remedy lies with the legislature as provided for in the Constitution.
However, because of this arguable inequity and the importance of this matter to the residents of both Brevard and Orange Counties, as well as to the parties, we certify the following issue as a matter of great public importance:
WHERE A MUNICIPALITY, PURSUANT TO STATUTORY AUTHORITY, LOCATES ON ITS PROPERTY IN ANOTHER COUNTY AN ELECTRICAL GENERATING PLANT WHICH SUPPLIES MOST OF ITS ELECTRICITY TO SUCH MUNICIPALITY'S RESIDENTS AND THE REMAINDER TO PRIVATE UTILITY COMPANIES, BUT DOES NOT SUPPLY ANY ELECTRICAL POWER TO THE RESIDENTS OF SUCH COUNTY, IS SUCH MUNICIPALLY OWNED PROPERTY EXEMPT FROM AD VALOREM TAXATION?
Accordingly, we affirm the final judgment of the trial court.
AFFIRMED.
GOSHORN, C.J., and DAUKSCH, J., concur.
NOTES
[1] The parties stipulated before the trial court that a campground owned by OUC but located in Brevard County is subject to ad valorem taxation and that the taxes thereon have been paid. Therefore, taxation of the campground is not an issue involved in this appeal.
[2] Article VII, section 3 provides:

Section 3. Taxes; exemptions. 
(a) All property owned by a municipality and used exclusively by it for municipal or public purposes shall be exempt from taxation. A municipality, owning property outside the municipality, may be required by general law to make payment to the taxing unit in which the property is located. Such portions of property as are used predominantly for educational, literary, scientific, religious or charitable purposes may be exempted by general law from taxation.
[3] Section 196.199(1)(c) provides:

196.199 Government property exemption. 
(1) Property owned and used by the following governmental units shall be exempt from taxation under the following conditions:
* * * * * *
(c) All property of the several political subdivisions and municipalities of this state or of entities created by general or special law and composed entirely of governmental agencies, or property conveyed to a nonprofit corporation which would revert to the governmental agency, which is used for governmental, municipal, or public purposes shall be exempt from ad valorem taxation, except as otherwise provided by law.
[4] The Orlando Utilities Commission was created as a statutory commission as part of the government of the City of Orlando, a municipal corporation.
[5] Appellants cite to Thomas Cooley's publication, The Law of Taxation, to support the claim that municipally owned land located outside the municipality can be subject to taxation. Review of the publication reveals that this citation is improper. In his publication Cooley specifically recognizes that the general rule is that municipal property which is not taxable where located within the boundaries of the municipality is not taxable, under like conditions, where located outside the municipality. Cooley explained that an express exemption of property belonging to counties or municipal corporations includes property located outside the county or municipality. Cooley specifically distinguished, however, municipal property located in another state, noting that in this situation the general rule favoring exemption does not apply. See T. Cooley, The Law of Taxation, §§ 643-644 (1924). Cooley, in section 644, also recognizes that a municipal water plant located in another city is not exempt from taxation where the portion of the plant sought to be taxed is used to supply water not to the home city but to the taxing city. See also City of Knoxville v. Park City, 130 Tenn. 626, 172 S.W. 286 (Tenn. 1914).
[6] Additionally, we note that a reading of both of the dissenting opinions in Saunders and Gwin supports the trial court's conclusion. Justice Hobson in his well reasoned dissent in Gwin points out quite forcibly that when the City of Tallahassee sells electricity generated in its plant located in Wakulla County to the residents of Wakulla County, as well as to the residents of Tallahassee, the City competes with taxpaying private enterprise in Wakulla County and it is not tax exempt for the reason that no municipal purpose is being served as to such subscribers who live outside of Tallahassee. Gwin, 132 So.2d at 278, 284-286 (Hobson, J. dissenting). The dissenting opinion in Saunders also subscribes to this view. See Saunders, 25 So.2d at 652, 654-655 (Chapman, C.J., dissenting). However, Justice Hobson, in Gwin, as the majority opinions do in both Saunders and Gwin, recognizes that municipal property which is not taxable when located within the boundaries of the municipality is not taxable under like conditions when located outside the municipality. Gwin, 132 So.2d at 284 (Hobson, J. dissenting). Thus, both the majority opinions in Saunders and Gwin, as well as the dissent in Gwin, recognize that if a municipality, pursuant to legislative authorization, locates an electric generating plant on its property situated in another county and the plant serves the residents of that municipality, such property is used exclusively for municipal or public purposes because the constitution makes no requirement as to its location.

To subscribe to appellants' argument that Saunders and Gwin require that the municipality must in part service the residents of the taxing county would lead to the anomaly that a municipality has a tax exempt status when it competes with private enterprise in the taxing county, but it loses its tax exempt status when it does not so compete. "The Supreme Court held [in Gwin] that the property was exempt as it was primarily for the use of Tallahassee and only incidentally used to serve private interests." Orlando Utilities Commission v. Milligan, 229 So.2d at 264.
[7] In Gwin, the Court, in the setting of the facts in that case, concluded that the words "`municipal purpose' and `public purpose' ... are both used in the same sense and that is one generally embraced within the broad meaning of public purpose... ." Gwin v. City of Tallahassee, 132 So.2d at 276. (Emphasis in original). See also Daytona Beach Racing and Recreation Facility District v. Paul, 179 So.2d 349, 353 (Fla. 1965).
[8] It should be noted that in concurring specially Justice Hobson stated, "I am bound by the majority in [Gwin]." Daytona Beach Racing, 179 So.2d at 356.