103 So.2d 873 (1956)
Petition for REVISION OF, OR AMENDMENT TO, THE INTEGRATION RULE OF THE FLORIDA BAR.
Supreme Court of Florida. En Banc.
July 13, 1956.
*874 Vincent C. Giblin, Richard H. Hunt, George A. Brautigam, Joseph A. Hackney, George J. Shamas, Thomas H. Anderson, E. Clyde Vining, Henry K. Gibson, R.P. Terry, Dewey Knight, Herschel E. Smith, Robert F. Underwood, Roscoe Brunstetter, Miami, Charles H. Spooner, Coral Gables, Charles J. Bodner, Joseph M. Fitzgerald, Milton M. Ferrell, Herbert A. Warren, Jr., Joe Creel, L. Earl Curry, Jackson L. Peters, G. Hugo Whitehouse, Douglas D. Reed, Robert H. Anderson, Tom J. Lummus, Eldon L. Boyce and Ellis S. Rubin, Miami, for petitioners
Donald K. Carroll, Jacksonville, for the Florida Bar.
John M. Coe, Pensacola, Stanley Milledge, Miami, Tobias Simon, Miami Beach, amicus curiae.
TERRELL, Justice.
Honorable Vincent C. Giblin and twenty-six other members of the Miami Bar petitioned this court to amend the Integration Rule of the Florida Bar to read as follows:
"The lawyer, because he is an officer of the courts in which he is admitted to practice and is pledged by his oath to support the Constitution of the United States, occupies a most important position of public trust. The bench and bar, as well as the public, have the right to insist, should his loyalty to the Nation and its Constitution be subject to justifiable doubt, that he dissipate such doubt, if he can, and his duty to do so cannot be discharged by silence when the circumstances are such as to demand that he speak. His duty requires that he expose candidly and truthfully his views and activities when, in the public interest, he is legitimately interrogated by a court of which he is an officer or by any other competent governmental agency. In such circumstances he may, of course, exercise for his own personal protection his constitutional right to decline to give testimony under oath which will incriminate or tend to incriminate him, but when, by exercising his right to safeguard himself, he magnifies and intensifies existing justifiable doubt as to his loyalty, his privilege to practice law may be withdrawn in the public interest and for the general welfare."
The Board of Governors of the Florida Bar responded to said petition with the suggestion that the following be substituted as its position with reference to the proposal embraced therein:
"A lawyer, being an officer of the court and pledged by his oath of admission to the bar to support the Constitution of the United States, holds a position of public trust. The practice of law is a privilege, not an inherent right. Should his membership in, or his adherence to the doctrines of, the Communist Party, one of the basic tenets of which is the overthrow of the United States Government by force and violence, be justifiably questioned by any court or governmental agency in any official proceedings, he has the duty to dispel any resulting doubt as to his loyalty to this country, if he can. If such membership or adherence be admitted by him or competently proved in said proceedings, or if he claims *875 constitutional protection in said proceedings by refusing to answer any competent question concerning such membership or adherence, the said admission, proof, or refusal shall, in any proceedings on account thereof filed against him pursuant to Article XI of this Rule, constitute prima facie evidence that he is unfit to continue to exercise the privilege of practicing law."
In fine, the objective of petitioners and the Florida Bar is to condemn membership in the Communist party on the part of attorneys at law and to withdraw the privilege to practice law in Florida if they persist in adherence to such membership. We heartily approve most of the pronouncements in the petition and in the response thereto of the bar. We do not think their objectives are materially different. The Giblin petition appears to contemplate automatic disbarment while the suggestion of the Florida Bar makes any effort to invoke the Fifth Amendment or avoid answering questions in any proceeding to ascertain his connection with or affiliation with the Communist party prima facie evidence that the lawyer is unfit to continue in the law practice. We do not think, however, that the adoption of the amendment as proposed would afford the protection to a lawyer charged with being a member of the Communist party contemplated in Sheiner v. State, Fla., 82 So.2d 657.
The Sheiner case has been discussed at length in bar journals and other periodicals throughout the country and has been generally though not unanimously approved. Adoption of the rule as proposed would, in our opinion, jeopardize rights secured by Section 12, Declaration of Rights, Constitution of Florida, F.S.A., as well as the guaranties embraced in the Fifth Amendment to the Federal Constitution. The proposed rule in whatever form approved should contemplate the proper exercise of every safeguard wrapped in these provisions of organic law; they may not always be obvious on the surface, however, the importance of adhering to the doctrine long established by this court that the investigation and trial of a lawyer for unprofessional conduct must be a judicial proceeding, in the manner provided by law or rule of this court, cannot be overemphasized. Petition of the Florida State Bar Association, 134 Fla. 851, 186 So. 280; Sheiner v. State, supra; Florida State Board of Architecture v. Seymour, Fla., 62 So.2d 1.
This court is committed to the doctrine that claiming the privilege against self-incrimination is not a disgrace; it is not to be construed as an inference of guilt or that the one who claims it is addicted to criminal tendencies; it may be claimed by the innocent as well as the guilty and its exercise may not be considered a breach of duty to the court. Boynton v. State ex rel. Mincer, Fla., 75 So.2d 211; State ex rel. Mitchell v. Kelly, Fla., 71 So.2d 887; State ex rel. Feldman v. Kelly, Fla., 76 So.2d 798; Florida State Board of Architecture v. Seymour, supra; United States ex rel. Belfrage v. Shaughnessy, 2 Cir., 1954, 212 F.2d 128; In the Matter of Grae, 282 N.Y. 428, 26 N.E.2d 963, 127 A.L.R. 1276; Konigsberg v. State Bar of California, 76 S.Ct. 832; Schware v. Board of Bar Examiners of New Mexico, 60 N.M. 304, 291 P.2d 607; Yale Law Journal, May 1956, p. 873. The doctrine of this paragraph should by all means be available to the lawyer because he may be called on to defend one who has invoked the Fifth Amendment or it may become his duty in many other ways or instances to espouse an unpopular cause, to give legal protection to the downtrodden or align himself with those who are misguided and in need of legal protection. He should not be prejudiced by the pressure of minorities or other groups when he takes up the cause of those who need his assistance.
In the recent case of Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 501, the *876 Supreme Court reviewed at length the privilege against self-incrimination and among other things said:
"No doubt the constitutional privilege may, on occasion, save a guilty man from his just desserts. It was aimed at a more far-reaching evil  a recurrence of the Inquisition and the Star Chamber, even if not in their stark brutality. Prevention of the greater evil was deemed of more importance than occurrence of the lesser evil. Having had much experience with a tendency in human nature to abuse power, the Founders sought to close the doors against like future abuses by law-enforcing agencies.
"As no constitutional guarantee enjoys preference, so none should suffer subordination or deletion. * * *"
The court then fortified its pronouncement with an excerpt from an address of Senator Albert J. Beveridge to the American Bar Association in 1920:
"`If liberty is worth keeping and free representative government worth saving, we must stand for all American fundamentals  not some, but all. All are woven into the great fabric of our national well-being. We cannot hold fast to some only, and abandon others that, for the moment, we find inconvenient. If one American fundamental is prostrated, others in the end will surely fall. The success or failure of the American theory of society and government, depends upon our fidelity to every one of those interdependent parts of that immortal charter of orderly freedom, the Constitution of the United States.'"
In the Sheiner case we held that a proceeding to disbar an attorney is disciplinary rather than criminal and that the seriousness of it entitles the accused to due process. We further held that confrontation, cross-examination and fair trial were essential ingredients of due process. Confrontation and cross-examination under oath are essential to due process because it is the approved method to test the probity of the evidence and discredit or eliminate that which is spurious or of doubtful veracity. Where the evidence is conflicting there must be a clear preponderance against the accused, since the end result of the trial is to deprive him of one of his most priceless possessions  the privilege to practice law.
In the recent case of Slochower v. Board of Higher Education of City of New York, 350 U.S. 551, 76 S.Ct. 637, 638, the Supreme Court of the United States had under consideration Section 903, New York City Charter, providing that whenever an employee of the city utilizes the privilege against self-incrimination to avoid answering a question relating to his official conduct, "`his term or tenure of office or employment shall terminate and such office or employment shall be vacant, and he shall not be eligible to election or appointment to any office or employment under the city or any agency.'" Appellant invoked the privilege against self-incrimination under the Fifth Amendment before an investigating committee of the United States Senate and was summarily discharged from his position as associate professor at Brooklyn College, an institution maintained by the City of New York. The Court of Appeals and the Supreme Court of New York County of Kings upheld appellant's dismissal holding that it was automatic and that he had no right to charges, notice, hearing or opportunity to explain. The Supreme Court of the United States reversed, holding that summary dismissal of appellant violates due process of law. The court further held that proper inquiry might show that appellant should be dismissed but that no such inquiry had been made. We think this case concludes the point here.
We are not convinced that the procedure proposed by the Giblin petition safeguards fair trial and due process as contemplated by the Sheiner case and the case last cited. *877 It recognizes his right to decline to give evidence that will incriminate him as contemplated by the Fifth Amendment, but when he does, "he magnifies and intensifies existing justifiable doubt as to his loyalty," not only that "his privilege to practice law may be withdrawn in the public interest and for the general welfare." The procedure proposed by the Florida Bar also recognizes the right of accused to invoke the protection of the Fifth Amendment; it goes further and recognizes that a proceeding to discipline him may be brought under Article XI, Discipline, Integration Rule of the Florida Bar, 31 F.S.A., but if the accused invokes the protection of the Fifth Amendment, any "admission, proof or refusal to answer" shall "constitute prima facie evidence that he is unfit to continue to exercise the privilege to practice law. In Ullmann v. United States and Slochower v. Board of Higher Education of City of New York, supra, the court scored the assumption that those who claim the privilege against self-incrimination are either criminals or perjurers. Said the court, the privilege would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury. It seems to me that the course proposed by the petition of the Florida Bar would be condemned by these cases.
We agree to the premise expressed in the petition that the lawyer occupies a most important position of public trust and that the public, the bench and the bar have a right to insist that he retain that position unsullied before the world. It is not enough for an attorney to be honest; he should be honest plus. The public must believe in his integrity. The usefulness of an attorney in the community depends on the confidence the public reposes in him and at times it is essential that this concept be enlarged to comprehend the nation. He cannot take an oath to support, protect and defend the Constitution and government of the United States and the State of Florida and then consistently embrace communism, give aid and sympathy to communistic fronts or be a liaison between the United States government and a communistic cell whose avowed purpose is the overthrow of the United States government, in fact every form of democratic government by force and violence. Congress and state legislatures have repeatedly found this to be its ultimate purpose. Communism renounces the fact of God. "In God We Trust," is the legend on our money and there is now pending in Congress (passed the House) a resolution to make it our national motto on the theory that it will be of great spiritual and psychological value to our country. In our democracy the individual is of first importance, while under communism the individual is a puppet in the hands of the state, good for cannon fodder. One of the most faithful adherents to communism in this country now pronounces it "a horrible, hideous, evil creation." It is impossible for two such antithetical concepts to live under the same skin. To attempt it, flouts the Biblical injunction  ye cannot serve God and Mammon. Matthew 6:24.
It is accordingly our view that lawyers in Florida are officers of the court, subject to limitations contained in Cammer v. United States, 350 U.S. 399, 76 S.Ct. 456. We do not think they can consistently become members of the Communist party or lend their sympathy or allegiance to any communist front, cell or other communist sympathizer known to be operating in this country without forfeiting their membership in the bar.
Any member of the bar of this state who joins the Communist party or who likewise allies himself with or lends his allegiance to any subsidiary of the Communist party as contemplated herein and refuses or neglects to resign from the bar shall subject himself to disciplinary action and the Board of Governors of the Florida Bar is hereby authorized to institute proceedings against him for that purpose. Such proceedings shall be initiated, *878 conducted and disposed of in the manner provided by Paragraph 5, Article XI, Integration Rule of the Florida Bar (published in January 1956 issue of Florida Bar Journal), but may be instituted on complaint of the state attorney, the complaint of any reputable lawyer or lawyers, or it may be predicated on any investigation made as to the accused's communist activities by any court of which he is an officer or by any other recognized governmental agency, state or national. The evidence taken by such court or agency may be introduced and accorded such weight as the Board of Governors may deem proper and the punishment may be disbarment, suspension from the practice or such lesser punishment as the Board of Governors may see fit to impose. Any action of the Board of Governors, as in all other disciplinary proceedings, is subject to review by this court.
I think the course thus proposed accords the accused every element of due process. It also preserves the doctrine of the Sheiner case and the Slochower case. To hold that one's attempt to invoke the protection of the Fifth Amendment or refusal to answer questions that would tend to incriminate him would be prima facie evidence that he is unfit to practice law would place an undue burden on him and would be condemned by the Slochower case. It seems to me that a course like this is the only one consistent with our tradition of fair trial and equal protection. Peremptory suspension has been condemned by the Bar of California, Association of the Bar of New York, by Dean Griswold of the Harvard Law School and others.
Petitions are granted and Article XI, Integration Rule of the Florida Bar will be amended accordingly.
It is so ordered.
DREW, C.J., and THOMAS, HOBSON, ROBERTS, THORNAL and O'CONNELL, JJ., concur.

APPENDIX
AMENDMENT TO PARAGRAPH 1, ARTICLE XI, DISCIPLINARY RULE.
Paragraph 1, Article XI, Disciplinary Rule, the Florida Bar as adopted Dec. 6, 1955, is hereby amended by adding the following paragraph thereto as Paragraph 1A:
Any member of the bar of this state, who joins the Communist party, allies himself with or in any way lends his allegiance to the Communist party or any subsidiary of said party as contemplated by petition for revision of, or amendment to, the Integration Rule of the Florida Bar, decided July 13, 1956, and refuses or neglects to resign from the bar shall subject himself to disciplinary action and the Board of Governors of the Florida Bar is hereby authorized to institute proceedings against him for that purpose. Such proceedings shall be initiated, conducted and disposed of in the manner provided by Article XI, Disciplinary Rule of the Florida Bar as adopted Dec. 6, 1955 (published in January 1956 issue of Florida Bar Journal), but may be instituted on complaint of the state attorney, the complaint of any reputable lawyer or lawyers, or it may be predicated on any investigation made as to the accused's communist activities by any court of which he is an officer or by other recognized governmental agency, state or national. The evidence taken by such court or agency may be introduced and accorded such weight as the Board of Governors may deem proper to give it and the punishment may be disbarment, suspension from the practice for a definite time or such lesser punishment as the Board of Governors may see fit to impose. An action by the Board of Governors is subject to review by this court in the same manner that other disciplinary orders are reviewed.
DREW, C.J., and TERRELL, THOMAS, HOBSON, ROBERTS, THORNAL and O'CONNELL, JJ., concur.