132 So.2d 273 (1961)
J.M. GWIN, as Tax Collector of the County of Wakulla and State of Florida, William A. Strickland, as County Tax Assessor of the County of Wakulla and State of Florida, and Ray E. Green, as Comptroller of the State of Florida, Appellants,
v.
CITY OF TALLAHASSEE, a municipal corporation created and existing under the laws of the State of Florida, Appellee.
No. 40078.
Supreme Court of Florida.
July 26, 1961.
A.L. Porter, Crawfordville, and Scruby & Yonge, Orange Park, for appellants.
James Messer, Jr., Tallahassee, for appellee.
DREW, Justice.
This direct appeal is from a final decree of the chancellor declaring null and void certain tax assessments for the years 1958 and 1959 levied by the tax assessor of Wakulla County, Florida against the electric generating plant and transmission and distribution lines of the City of Tallahassee located in said county and permanently enjoining the tax collector and assessor of said county from attempting to enforce the payment of said taxes and from assessing any further taxes on the aforementioned property of the said City of Tallahassee located within such county. The decree construes two controlling provisions of *274 the Florida Constitution[1] and upholds the validity of certain statutes of this State exempting municipally owned public utilities from taxation.
The City of Tallahassee, by virtue of a grant of authority of the Legislature of Florida, has been delegated the power and authority to supply public utility service for domestic and other purposes to its citizens and to individuals and corporations outside of the limits of said city including the exclusive right to transmit and sell electrical energy and natural and manufactured gas within a zone three miles wide adjacent to and extending around and outside the corporate limits of the city.[2]
In 1934 the city extended its electrical distribution lines from its corporate limits southerly along State Road 363 to the community of St. Marks in Wakulla County for the purpose of supplying electrical energy for light and power to the inhabitants of said community at a time when no other supplier or distributor of electrical energy was able or willing to furnish such power to the said community. In 1948, the city acquired a tract of land lying adjacent to the St. Marks River in Wakulla County and thereafter constructed on said land an electric generating plant for the purpose of furnishing electric current to the City of Tallahassee, its inhabitants, the area lying adjacent thereto under the exclusive right heretofore mentioned, the inhabitants of the City of St. Marks, Newport and users in close proximity to its lines along and adjacent to said State Road 363.
No attempt was ever made by Wakulla County to assess any property of the City used in its generating plant or transmission lines until the assessments which are the subject of this litigation.
In a well reasoned opinion and decree, the able chancellor below determined that the decision in this case was controlled by Saunders v. City of Jacksonville, 1946, 157 Fla. 240, 25 So.2d 648, and, in so doing, made the following observations:
"The defendants argue, and cite respectable authority in support of the contention, that the distribution and sale of electric current by the City of Tallahassee to the inhabitants of St. Marks, New Port, Wakulla, and other areas in Wakulla County is not a municipal purpose of the City of Tallahassee, that a substantial part of the use to which the City of Tallahassee puts its property in Wakulla County is the generation and sale of electric current to these customers; that consequently this property of the City is not held and used exclusively for municipal purposes. They conclude that this property is, consequently, subject to taxation in Wakulla County.
"The case must turn upon a definition of `municipal purposes.'
"The Supreme Court of Florida has held point blank: `There is no doubt that the furnishing of electric current is a municipal purpose.' [Saunders vs. City of Jacksonville] The question naturally presents itself: May the furnishing of electricity by the City of Tallahassee to its inhabitants be a `municipal purpose' of the City of Tallahassee but the furnishing of similar services to the inhabitants of a village in another county not be a `municipal purpose' of the City of Tallahassee? This question has likewise been answered by the Supreme Court in the same case. The Court said:

*275 `The exemption inures to the property itself when held and used for municipal purposes. The Constitution makes no requirement of its location. If the property serves a municipal purpose to the residents within Jacksonville, then it likewise serves a municipal purpose to the residents outside of Jacksonville. Its character does not change when the power line traverses the city or county line.' (Emphasis supplied.)
"The defendants urge that the cited case was decided under a different statute and should not, therefore, be considered as absolutely controlling in the case at bar. In that case the Court defined the phrase `municipal purpose', which is used in the statute there under consideration, is used in the Constitution, and is used in the statute now before the Court. If the furnishing of electric current to the inhabitants of towns in Clay County was a municipal purpose of the City of Jacksonville, which is located in Duval County, when the Saunders case was decided, then the furnishing of electricity to towns in Wakulla County by the City of Tallahassee is a municipal purpose of the City of Tallahassee today. It is the duty of this Court to follow the precedent established by the Supreme Court of the State."
The principal thrust of the argument of Wakulla County below and here was and is that the amendments to Sections 192.06(2) and 192.52 Florida Statutes in the 1957 session of the Florida Legislature, F.S.A.[3] had the effect of rendering such decision inapplicable to the Tallahassee generating plant and distribution lines in Wakulla County and evidenced a clear legislative intention to subject such property to taxation by that county. The chancellor did not accept this argument nor can we.
The involved legislative history of this 1957 act, which embraces approximately 37 typewritten pages of the record, convinces us that the statute, as finally amended, does not differ in any material respect from the previous provisions insofar as the particular question with which we are *276 now concerned. If any material change may be discerned in the act, the four paragraphs in the preamble indicate the intention of the Legislature in July of 1957 to affirm the conclusion of this Court in the Saunders case that the electrical distribution system of the City of Tallahassee was not subject to taxation. The language used in the preamble, considered in connection with the legislative history as shown by the Journals of the Senate and House, and the new language "including all property of municipally owned and operated public utilities held and used exclusively for municipal purposes" does not, in our opinion, evidence any intent of the Legislature to subject the properties of this city lying outside Leon County to taxation. Nor does it in any way alter the effect of the decision of this Court in the Saunders case.
Wakulla County places great emphasis upon the addition in the act of the words "used exclusively for municipal purposes". We are urged, in construing this act, to draw a distinction between the words "municipal purpose" and "public purpose". Generically, of course, there is a difference but, so far as the use of the words in this particular setting is concerned, we think it clear that they are both used in the same sense and that is one generally embraced within the broad meaning of public purpose. Moreover, this argument seems to us to have been answered conclusively in the Saunders case contrary to Wakulla County's contention by the following language from that opinion:
"The exemption inures to the property itself when held and used for municipal purposes. The Constitution makes no requirement as to its location. If the property serves a municipal purpose to the residents within Jacksonville, then it likewise serves a municipal purpose to the residents outside of Jacksonville. Its character does not change when the power line traverses the city or county line." 25 So.2d at page 650.
We think it would be difficult to select language which would establish more clearly the interpretation of this Court that, as used in these acts, "municipal purpose" must be construed in its broader sense as "public purpose". The use of the word "exclusively" does not change the meaning of the statute as it previously existed. This adverb was in the Constitution and in Section 192.52, Florida Statutes, of the Act as it existed prior to 1927. Adding it as an additional sentence to Section 192.06, Florida Statutes, along with the word used has no effect whatever on our interpretation in the Saunders case. Moreover, we think the record in this case clearly establishes that all of the property owned by the City of Tallahassee and being used in its generating and distribution system is being used under the Saunders decision exclusively for municipal purposes. Even if we concede arguendo that the distribution lines serving the residents of St. Marks and Newport and incidental customers along the main transmission line between the City of Tallahassee and those communities was a private purpose as distinguished from a municipal or public purpose, such fact would not destroy the exempt status of this property. We were confronted with an analogous situation in Gate City Garage v. City of Jacksonville, Fla. 1953, 66 So.2d 653 in a case where the City of Jacksonville had leased a filling station on a large parking lot for private purposes. It was contended in that case that such action on the part of the City was equivalent to taking one man's property by public authority and leasing to another for private gain and therefore controverted the Constitution of this State. In disposing of this contention this Court said:
"* * * Constructing and leasing a filling station on a parking lot the size of that contemplated is a mere incident, the primary purpose being to acquire and construct a parking lot to serve a public and municipal purpose. * * *
* * * * * *

*277 "This Court takes judicial notice of the fact that in many municipal and county buildings, such as, city halls and court houses and even the State Capitol, space is leased or concessions are granted to private individuals for the sale of food, magazines, newspapers, public telephones and other things which are mere incidents to the main or primary purpose of the buildings, but are for the convenience of those who use the buildings or facilities for a public purpose. In 18 Am. Jur. in the article on Eminent Domain, Sec. 41, p. 669, the author states:

"`The general rule is settled that the exercise of eminent domain for a public purpose which is primary and paramount will not be defeated by the fact that incidentally a private use or benefit will result which will not itself warrant the exercise of the power. * * *'" (Emphasis supplied.) 66 So.2d at page 659.
In a later case of Panama City v. State, Fla. 1957, 93 So.2d 608, 614, we affirmed the principle laid down in the Gate City case and held that so long as the private use "is an appendage, * * * and therefore `an incident to the main or primary purpose and for the convenience of those who use * * * the facilities for a public purpose,'" the public nature of the project is not in any way affected. While, of course, these cases do not deal with the exact question with which we are now concerned, the principal involved in each is identical.
The case for Wakulla County hangs by a thin thread indeed. If we were dealing here with the property of a private corporation claimed to be exempt, the county would be in a stronger position. If property owned by the municipalities of this State held and used for a valid municipal purpose is to be subjected to taxation by another political body, we think the legislative authority for so doing should be clear and unambiguous.
In the Saunders case this Court said, with reference to those properties of municipalities:
"Many of our opinions have been cited to sustain the principle that exemptions from taxes are frowned upon and each claim should be strictly construed. This rule does not apply where the question is raised by a municipality asserting the exemption by virtue of a statute duly passed pursuant to the Constitution. The latter case exemption is the rule and taxation is the exemption [sic exception]." 25 So.2d at page 651.
That the Legislature of this State has the power to permit Wakulla County to tax the electrical generating plant and transmission lines of the City of Tallahassee is beyond question. That the acts relied on by the county in this litigation do not accomplish that purpose is equally clear.
Affirmed.
TERRELL, THOMAS and THORNAL, JJ., concur.
O'CONNELL, J., concurs specially with opinion.
HOBSON, J., dissents with opinion.
ROBERTS, C.J., dissents and agrees with conclusion of dissenting opinion by HOBSON, J.
O'CONNELL, Justice (concurring specially).
Although I am personally unalterably opposed to participation by government in private enterprise, and particularly so when it does so in competition, on a tax free basis, with private business which is taxed, I am nevertheless forced to concur in the majority opinion authored by Mr. Justice DREW. I am forced to agree with the *278 majority opinion because I believe it correctly follows the law of this state.
It cannot be questioned that providing electric power in the area of a city is a municipal function of that city if the city be authorized to do so by law.
In the case of Saunders v. City of Jacksonville, 1946, 157 Fla. 240, 25 So.2d 648 this Court held that where authorized by statute the furnishing of electric power to the areas outside its boundaries was a municipal function of the City of Jacksonville. Therefore, that function which is authorized as a municipal function of a city when performed within its boundaries may also be a municipal function of that city when authorized by law to be performed outside its boundaries.
In the case now before us the applicable statutes provide among other things that:
"The City of Tallahassee shall have the power and authority to supply water, electricity, gas and sanitary sewerage service for domestic and other purposes to individuals and corporations outside of the corporate limits of said City, * * *"
Thus the legislature has made the furnishing of electrical power to areas outside its boundaries a municipal purpose of the City of Tallahassee.
Insofar as I can discover there is no constitutional provision which prohibits the legislature from doing so even though it be contrary to the basic purpose for formation of cities which is to furnish services to those areas within their respective boundaries.
Although at first inclined to do so I am unable to agree with the dissenting opinion of Mr. Justice HOBSON which holds that the 1957 Amendment to Sections 192.06 and 192.52, F.S. makes the holding of the Saunders case, supra, inapplicable here.
Article XVI, Section 16, Florida Constitution which was considered by this Court in the Saunders case, supra, provides now as it did then that the property of all corporations "* * * shall be subject to taxation unless such property be held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes." (Emphasis added.)
The 1957 Amendment to Sections 192.06 and 192.52, F.S. borrowed from Article XVI, Section 16, the words underscored in the preceding paragraph.
As I view it adding these words, taken from the constitutional provision, to the statutes can cause no different interpretation to be given the amended statutes than was required theretofore. Prior to the amendment of the statutes these words in the constitution were controlling and required each statute on the subject to be construed in their light.
HOBSON, Justice (dissenting).
The majority opinion constitutes, in my judgment, but another step toward the complete destruction of free enterprise.[1] Privately owned public utility companies should not be forced to face unfair competition from any tax exempt governmental unit under the guise of a public purpose.[2]
It has always been my understanding that this country was founded upon the principle of individual freedoms, including that of free enterprise. I verily believe that free enterprise was one of the most important cornerstones of our constitutional form of government as it was inaugurated and envisaged by our founding fathers. Indeed, the principle of free *279 enterprise has played a major part in making this nation great.
It has been suggested that we are toying with the idea of becoming socialistic. I do not believe we are now toying with the idea. I do not think that we are wading ankle deep in the ever rushing stream of socialism, but that we are presently in midstream, being carried without apparent resistance into a maelstrom of destruction insofar as the liberties of a nation of free people are concerned. If stateism or any other "ism" is to supplant our constitutional form of government it should come into existence by free expression of those who are to be so governed  not by legislative, executive or judicial fiat.
It is true that the leftist or socialistic trend was inaugurated not by the judicial but by the legislative branch of government, obviously abetted by, at least, the acquiescence of the executive division. It is in my judgment high time that the judiciary under our system of checks and balances should adopt the time honored admonition; fiat justitia ruat caelum, "Let justice be done, though the heavens fall", and curb this swing which is inimical to our constitutionally secured freedoms. It may be true that our constitution does not expressly prohibit a socialistic form of government but it is definitely antithetical to the guaranteed freedoms ordained and prescribed by the sage patriots who diced with death while the mad guns cursed o'er head to gain the right to establish a nation comprised of free people and a form of government which it was hoped would endure forever. Socialism may be classified under the general heading of economics rather than a fundamental premise of government  nevertheless, history establishes the fact, with but one exception so far as I am advised (Great Britain), that it is but a step toward communism or dictatorship. May God save us and our progeny from either!
Regrettably our courts throughout the land are evidencing by their recent decisions a definite trend toward concurring in the dismemberment of our constitution by aiding the process of destroying piecemeal  one by one  those freedoms which have heretofore been jealously guarded. Repeated predictions that this country and others would soon turn to stateism, socialism or communism perhaps without the firing of a gun might come to pass unless real defenders of Americanism arise with determination to save us from enslavement. It is not so much our enemies from without the boundaries of this country as it is those from within our borders who present the genuine threat to our survival as a free people.
Only recently I read a statement which I am impelled to quote in full:
"The well-known dramatist, Channing Pollock, addressing a group of teachers observed that most democracies last for about 200 years. They are conceived and developed by simple, vigorous, idealistic, hard-working people who, unfortunately, with success become rich and decadent, learn to live without labor, depend more on the largess of big government, and end by trading domestic tyrants for foreign tyrants."
Need history repeat itself? I think not  but our course is charted. It is apodictio  we must awaken and act or suffer the consequences. Benjamin Franklin when asked, "What form of government have you men given us?" replied, "We have given you a republican form of government if you can keep it." (Italics supplied.)
Complacency  lethargy  brought about by individual, as well as collective, selfishness coupled with the avid pursuit of the almighty dollar  "money", if you please, "the love" of which is the "root of all evil", is responsible for the chaos, which if not now actually existent, is definitely imminent. This is not an original idea. Its verity is evident to every thoughtful American but he either indulges in wishful *280 thinking or sticks his head in the sand as does the proverbial ostrich.
If ours is to become a parental government, who is going to support the parent? The answer is simple. The American people who now and have always enjoyed individual freedom will be ensnared within the inexorable bonds of peonage.
At this juncture I consider it appropriate to quote from an opinion prepared by the talented and beloved dean of this court. Justice Glenn Terrell in the case of In re the Integration Rule of the Florida Bar, Fla., 103 So.2d 873, 876, quoted with approval an excerpt from an address by Senator Albert J. Beveridge delivered before the American Bar Association in 1920:
"`If liberty is worth keeping and free representative government worth saving, we must stand for all American fundamentals  not some, but all. All are woven into the great fabric of our national well-being. We cannot hold fast to some only, and abandon others that, for the moment, we find inconvenient. If one American fundamental is prostrated, others in the end will surely fall. The success or failure of the American theory of society and government, depends upon our fidelity to every one of those interdependent parts of that immortal charter of orderly freedom, the Constitution of the United States.'"
Having recited my deep and sincere feelings with reference to the current  intentional or unintentional  drift away from our heretofore cherished constitutional form of government I now give my attention to the problem presented in and by the instant suit.
This is a direct appeal from a final decree rendered in the circuit court of the second judicial circuit in and for Wakulla County.
The appellee, the City of Tallahassee, which was the plaintiff in the action below, sought an injunction to restrain the collection by the appellants, defendants below, the Tax Collector and Tax Assessor of Wakulla County and the Comptroller of the State of Florida, of county ad valorem taxes assessed against property of the appellee for the year 1958.
The City of Tallahassee situated in Leon County has, since 1948, owned and operated an electric generating plant at St. Marks, in Wakulla County. The choice of location was based upon the plentiful supply of pure water and the benefit of lower fuel freight rates. A part of the electricity produced at the generating plant is transmitted into Leon County and consumed by subscribers in the City and elsewhere in Leon County. Another part of the electricity is transmitted and distributed throughout a substantial part of Wakulla County where it is sold at retail and for profit to the city. Two private power companies are also engaged in selling electricity in Wakulla County.
Prior to 1957, the property of the City which was located in Wakulla County was considered exempt under the provisions of F.S. § 192.52, F.S.A., which provided "The real and personal property of public utilities, owned, operated or controlled by any municipality in the State of Florida, situate, lying and being in the county other than the county in which such municipality is located shall not be subject to ad valorem or personal taxes in such county.", and F.S. § 192.06, F.S.A., which provided "The following property shall be exempt from taxation: * * * (2) All public property of the several counties, cities, villages, towns and school districts in this state, used or intended for public purposes * *"
In 1957, the Florida Legislature amended F.S. § 192.52 to read: "The real and personal property of municipally owned and operated public utilities held and used exclusively for municipal purposes shall not be subject to ad valorem or personal property taxes." (Italics supplied.) At *281 the same time Section 192.06, was amended to read, in pertinent part:
"The following property shall be exempt from taxation: * * *
"(2) All public property of the several counties, cities, villages, towns and school districts in this state, used or intended for public purposes, * * * and including all property of municipally owned and operated public utilities held and used exclusively for municipal purposes." (Italics supplied.)
Based upon the change in language of the pertinent statutes, Wakulla County, beginning with the tax year 1958, subjected the utility property to ad valorem and personal property taxes. The City brought an action for declaratory decree and injunctive relief, asking the court to declare that all of its property in Wakulla County is held and used exclusively for municipal purposes, and is thus exempt from taxation under the amended statutes, and asked that the taxing authorities of Wakulla County be enjoined from assessing the taxes in question. The circuit court declared the property to be exempt and granted the injunction, from which decree the defendants appeal.
The trial judge in his opinion cited the following provisions of the Florida Constitution as pertinent: Section 1, Article IX:
"The Legislature shall provide for a uniform and equal rate of taxation, * * * and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, literary, scientific, religious or charitable purposes."
Section 16, Article XVI:
"The property of all corporations, * * * whether heretofore or hereafter incorporated, shall be subject to taxation unless such property be held and used exclusively for religious, scientific, municipal, educational, literary or charitable purposes." (Italics supplied.)
The court, after discussing the applicability of these constitutional provisions, concluded that since the statutory exemption now accorded municipalities, is limited to property held and used exclusively for municipal purposes, it was unnecessary to determine whether the exemption is available to the city only under Section 16, Article XVI or whether it may claim exemption under the statute passed pursuant to Article IX, Section 1. It was determined by the court that the case must turn upon a definition of "municipal purposes". The court then proceeded to construe and apply that phrase to the facts at hand. Our jurisdiction in this case is based upon the construction of that phrase as it is used in the pertinent constitutional provisions. The construction by the Chancellor of the phrase "municipal purposes" embraces not only the meaning and application of that term as it appears in the statute but also its meaning as it is used in the constitution. This is true because the Legislature is without power to exempt from taxation any class of property which the constitution itself makes no provision for exempting. L. Maxcy, Inc. v. Federal Land Bank of Columbia, 1933, 111 Fla. 116, 150 So. 248, 151 So. 276. Inasmuch as the provisions of the constitution are supreme, it is axiomatic that the meaning of the phrase "municipal purposes" as it is used in the constitution must "control" the meaning of that phrase as it is used in a statute enacted pursuant to the pertinent constitutional provisions. It appears, therefore, that the trial court construed a controlling provision of the Florida Constitution within the meaning of Article V, Section 4, Constitution of the State of Florida, and that we, therefore, have jurisdiction of the case on a direct appeal.
Having determined the matter of jurisdiction, I next turn to the question of *282 whether the injunction was properly granted by the trial court.
The first issue which presents itself is whether any municipal purpose is being served by the City of Tallahassee in its operation of its electric power plant. Under the provisions of the Florida Constitution and the statutes which are here pertinent it is the use to which the property is put and not the ownership thereof that governs entitlement to exemption. State ex rel. Burbridge v. St. John, 143 Fla. 544, 197 So. 131; State v. Inter-American Center Authority, Fla., 84 So.2d 9. See also Cooley, Taxation, 4th Ed., Section 638. It should be constantly borne in mind, however, that the taxes with which we are dealing are "ad valorem and personal property" taxes. That is to say taxes upon real property, the improvements thereon and the personal property located thereon and contained therein.
It is well settled that the furnishing by a municipality of electric power to its inhabitants is a municipal purpose. Jacksonville Electric Light Co. v. City of Jacksonville, 36 Fla. 229, 18 So. 677, 30 L.R.A. 540, City of Jacksonville v. Southern Bell Tel. & Tel. Co., 57 Fla. 374, 49 So. 509.
Therefore, insofar as the power plant furnishes the inhabitants of the City of Tallahassee with electric power there is no question but that it is used for a valid municipal purpose.
However, it is not alone sufficient that a municipal purpose is being served; the statute and our constitution provide that the property must be held and used exclusively for municipal purposes. Sections 192.06, 192.52, F.S.A. (Italics supplied.)
Thus, it must next be determined whether any portion of the electric power plant owned by the City of Tallahassee is devoted to other than municipal purposes. The question of whether property belonging to a municipally owned electric power system is taxable in a county other than that in which the municipality is situated arose in the case of Saunders v. City of Jacksonville, 157 Fla. 240, 25 So.2d 648. At the time that case was decided, former Section 192.06 was in effect, and that statute provided "That the real and personal property of public utilities, owned, operated or controlled by any municipality in the State of Florida, situate, lying and being in the county other that the county in which such municipality is located, shall not be subject to ad valorem or personal taxes in such county."
The City of Jacksonville, situated in Duval County, brought an action to enjoin Clay County from assessing and collecting an ad valorem tax on electric light poles and other electrical fixtures located in Clay County but owned and used by the City of Jacksonville to transmit power for sale to consumers in Clay County. It was held that the property was exempt under the above quoted statute. The Court stated that the question of whether a municipal purpose was being served was for legislative determination, and that since the legislature had decreed that property owned, operated or controlled by the City but situated in another county was exempt, that determination of the legislature would be allowed to stand.
The Court pointed out that the Constitution makes no requirements as to location of property as a prerequisite to exemption, and it was stated "if the property serves a municipal purpose [for] residents within Jacksonville, then it likewise serves a municipal purpose [for] residents outside of Jacksonville. Its character does not change when the power lines traverse the county or city line." It was deemed to be a "controlling factor that the owner of the property has no stockholders, or partners, and any income must necessarily accrue to the general public." Because of the factual similarity between the instant case and the Saunders case, it would appear that the Saunders case would be controlling here were it not for the change in the pertinent statutes since the decision in that case. However, as has been pointed out, the statute *283 which governed the Saunders case was amended in 1957. Inasmuch as the preamble to the amendatory statute is an aid to its construction, the present statute is herewith set out in full:
"Whereas, municipally owned and operated utilities of the several municipalities now existing in Florida are serving a valid municipal purpose in producing and distributing electrical power and water, and
"Whereas, the property of such municipally owned and operated public utilities serving such municipal purposes cannot be subject to taxation, and
"Whereas, under our system of free enterprise privately owned public utilities, while serving a necessary and useful function in providing utility services for large areas of Florida, should not be subjected to unfair competition from public utilities which are tax exempt where no municipal purpose is being performed, and
"Whereas, both private and municipal utility companies have their proper sphere of operation, Now, Therefore, Be It Enacted by the Legislature of the State of Florida:
"Section 1. Subsection (2) of Section 192.06, Florida Statutes, is amended to read: (2) All public property of the several counties, cities, villages, towns and school districts in this state, used or intended for public purposes, including both real and personal property of all fire, hose and hook and ladder companies, except lands sold for taxes for the use of any counties, cities, villages, towns or school districts; and including all property of municipally owned and operated public utilities held and used exclusively for municipal purposes.
"Section 2. Section 192.52, Florida Statutes, is amended to read:
"192.52 Tax exemption, municipal public utilities.  The real and personal property of municipally owned and operated public utilities held and used exclusively for municipal purposes shall not be subject to ad valorem or personal property taxes."
It is an elementary rule of statutory construction that when material changes are made by the legislature in the language of an existing statute, it is presumed that the legislature intended thereby to accomplish some objective, or alteration of the law. 30 Fla.Jur., Statutes, Section 91, Blount v. State, 102 Fla. 1100, 138 So. 2, 80 A.L.R. 830; Sunshine State News Co. v. State, Fla.App., 121 So.2d 705.
A reading of the preamble to the amendatory statute makes it even more evident that in this case the legislature intended, as well it should have, a change in the rule established in the Saunders case. Under the former statute property of a municipally owned public utility was automatically exempt where the property was situated in a county other than that in which the municipality was located. Under the present law the phrase "municipal purpose" is not defined by the legislature but is left as a matter for judicial determination.
Counsel for the appellees contend that regardless of the change of language in the statute, the rule in the Saunders case should still govern because in that case the Court concluded that a municipal purpose was being served where the property in question was being employed to furnish electricity to persons outside Duval County. It is urged that the effect of the 1957 amendment was to put the Saunders holding in statutory form.
I am unable to agree with this contention. It has been held that it is within the province of the legislature to determine what is and what is not a municipal purpose and the legislature's determination in such cases will not be overturned by this Court unless there is a clear abuse of discretion. State *284 ex rel. Harper v. McDavid, 145 Fla. 605, 200 So. 100, 133 A.L.R. 360; Miller v. Doss, Fla., 46 So.2d 888. The Court in the Saunders case was faced, in effect, with a legislative determination that property of a municipally owned public utility located in another county was serving a municipal purpose and was therefore tax exempt. Consequently, the Court in that case merely had to determine whether or not the legislature had exceeded its powers in decreeing the existence of such municipal purpose, and it was held that it had not.
In the instant case, however, the legislature in the present "tax exemption" statutes has made no such determination of the existence of a municipal purpose. In such a situation the duty devolves upon the courts to determine whether or not a municipal purpose exists.
In light of the statutory amendments by virtue of which the legislature has abdicated its right to define municipal purposes within constitutional limitations, the Saunders case is no longer dispositive of the issues at hand, and this case must be determined by reference to broad principles of law.
It is generally held that a municipal purpose is one which is confined to the territorial limits of the municipality in question. In Chardkoff Junk Company v. City of Tampa, 102 Fla. 501, 135 So. 457, this court said:
"Municipal functions are those granted for the specific benefit and advantage of the urban community embraced within the corporated boundaries. Logically all those are strictly municipal functions which specially and peculiarly promote the comfort, convenience, safety, and happiness of the citizens of the municipality, rather than the welfare of the general public." (Emphasis supplied.)
Although the Chardkoff case involved a different point of law, its description of municipal functions is equally applicable in the instant case. See also Lott v. City of Orlando, 142 Fla. 338, 196 So. 313; Styles v. Village of Newport, 76 Vt. 154, 56 A. 662; Spahn v. Stewart, 268 Ky. 97, 103 S.W.2d 651. However, the mere fact that municipally owned property lies beyond the corporate limits of the municipality does not deprive it of its exempt status, the general rule being that municipal property which is not taxable when located within the boundaries of the municipality is not taxable under like conditions when located outside the municipality. Cooley, Taxation, 4th Ed., Section 643, Section 644. Nor is the exemption of a municipally owned electric or water plant destroyed as a general rule where a portion of the electricity or water is furnished to subscribers in proximity to the city where the furnishing of such water or power is merely incidental to the home supply, Commonwealth v. City of Richmond, 116 Va. 69, 81 S.E. 69, L.R.A. 1915A, 1118; City of Knoxville v. Park City, 130 Tenn. 626, 172 S.W. 286, L.R.A. 1915D, 1103; Commonwealth v. City of Covington, 128 Ky. 36, 107 S.W. 231, 14 L.R.A.,N.S., 1214; City of Chattanooga v. Marion County, Tenn., 315 S.W.2d 407; Cooley, Taxation, 4th Ed., Section 644; McQuillan, Municipal Corporations, Section 4460, 1960 Supp.
However, it is generally held that where the municipal power plant, or water supply, is located outside the corporate limits and is used to furnish services to subscribers for profits in other political subdivisions, then the facility is not tax exempt for the reason that no municipal purpose is being served as to such subscribers. Styles v. Village of Newport, 76 Vt. 154, 56 A. 662, Cooley, Taxation, 4th Ed., Section 644. It is noted that the two cases which the Saunders case cited as standing for the proposition that the exemption applies even where the utility lines extend beyond the city limits in competition with privately owned utilities both involved statutes granting the exemption on the basis of municipal ownership. State ex rel. Becker v. Smith, 144 Kan. 570, 61 P.2d 897; Chadwick v. City of Crawfordsville, 216 Ind. 399, 24 N.E.2d 937, *285 129 A.L.R. 469. They were, therefore, applicable to the facts in the Saunders case; they are not applicable to the instant case.
In the case of Sachem's Head Property Owners' Association v. Town of Guilford, 112 Conn. 515, 152 A. 877, 879, it was held that where water mains belonging to the property owners' association[3] extended beyond the territorial limits of the association[4] and were used for furnishing water to another community, the mains were not used for a public purpose "within the meaning of the statute" under consideration and were therefore subject to taxation. The court stated that the association owed no municipal duty to the residents of the area into which its lines were extended and fulfilled no municipal, and therefore no public, purpose there.
A case involving facts similar to the instant case is City of Knoxville v. Park City, 130 Tenn. 626, 172 S.W. 286, L.R.A. 1915D, 1103. The Constitution of the state of Tennessee provided that the legislature could exempt such properties as may be held by cities or towns and used exclusively for public or corporation purposes. A statute enacted pursuant to the constitutional provision exempted all property of any city or town when the property is used exclusively for municipal corporation purposes. The city of Knoxville owned and operated a water plant within the corporate limits of Park City and used the water plant to supply the residents of Park City with water at a profit. It was held that the property was taxable for the reason that the Park City plant owned by the City of Knoxville was not employed exclusively for corporate or municipal purposes inasmuch as the City of Knoxville had no municipal function to serve within the limits of Park City.
The fact that the municipally owned utility produces revenue which in turn is devoted to municipal purposes is not sufficient to establish a municipal purpose in absence of some statutory declaration of municipal purpose. See 3 A.L.R. 1439, 101 A.L.R. 787 and 129 A.L.R. 480. It requires fancy foot work and a species of legalistic legerdemain to reach a contrary conclusion.
If the rule were otherwise the mere fact that a city owned any type of revenue producing property would render that enterprise tax exempt, for all revenue which a city receives must necessarily be devoted to municipal purposes. Our state constitution forbids the appropriation of public funds to private purposes, Art. IX, Section 10, Fla. Const., F.S.A. However, as we have seen, it has been held in Florida that municipal ownership alone is not sufficient to establish entitlement to a tax exemption. Therefore, I conclude that in the instant case the fact that the City of Tallahassee devotes the profits derived from the subscribers in Wakulla County to municipal purposes does not in itself establish that the power plant is "held and used exclusively for municipal purposes".
In line with the authorities discussed above I would hold that insofar as the power plant belonging to the City of Tallahassee is used for the production of electricity for sale to consumers in Wakulla County, Florida, there is no municipal purpose being served.
Having determined that the power plant belonging to the City of Tallahassee is not "held and used exclusively for municipal purposes", the question arises as to whether the exemption which the property has heretofore enjoyed is completely destroyed or whether it is lot only insofar as the product of the power plant is not devoted to municipal purposes.
It appears that this court has in the past placed divergent interpretations on the words "used exclusively" as those words appear in the provision of the Constitution under consideration. For example, compare *286 Rast v. Hulvey, 77 Fla. 74, 80 So. 750, with City of St. Augustine, Fla. v. Middleton, 147 Fla. 529, 3 So.2d 153. However, inasmuch as the term "exclusive" is not ambiguous but is a word of common ordinary usage and meaning, I am of the opinion that it is a term which admits of but one construction when considered in the light of the constitutional and statutory provisions pertinent here[5].
Exclusive as defined in Webster's New International Dictionary, Second Edition, means "single", "sole", "singly devoted", "undivided".[6] Such a definition can point to but one conclusion as to the meaning of the statute before us, that is, that inasmuch as the power plant in question is devoted in part to the furnishing of electricity to subscribers in Wakulla County it is not "held and used exclusively for municipal purposes." See Cooley, Taxation, Fourth Edition, Section 688. My conclusion on this point is reinforced by the fact that the property here is not subject to physical severance as to municipal and non-municipal user.
Moreover I advert to the fact that the subject taxes are ad valorem and personal property taxes  not excise taxes. The exemption is based upon the use of such property. It is crystal clear that the real and personal property involved herein cannot be separated and divided into taxable and non-taxable segments for the purpose of levying the subject taxes. It is true that this court has permitted the severance of a part of a building for the purpose of allowing an exemption from ad valorem and personal property taxes. In the case of State ex rel. Cragor Co. v. Doss, 150 Fla. 491, 8 So.2d 17, we held that in a multiple floor building the floors used exclusively for the fraternal organization's purposes could be separated from those parts or floors of the building which were rented at a profit to individuals or to non-exempt tenants. The situation here presented is entirely different from that which confronted us in the Cragor case.
Since in my opinion the property in question is not held and used exclusively for municipal purposes, it follows that it is not exempt and is taxable by the appellant. Accordingly, I would reverse the judgment of the circuit court.
Although I may be charged with being pleonastic I must again state that the Saunders[7] case is not controlling herein.
In 1957 the Florida Legislature, obviously recognizing its egregious error, attempted to correct the mistake it made when it enacted Chapter 21985, Laws of Florida, 1943. There could have been but one purpose or intendment upon the part of the Legislature which was to change the existing law so that municipalities might not go tax free into competition with privately owned utility companies. This is so because it was wholly unnecessary for the Legislature to pass any law if it wished to perpetuate Chapter 21985, Laws of Florida, 1943, as it was construed by this Court in the Saunders case.
It is my firm belief that this Court should give to the Saunders case the construction which I have given it. Under any other interpretation of that decision it would have been mandatory upon this Court to have held Chapter 21985, Laws of Florida, 1943, unconstitutional as being violative of the clear language of our Constitution appearing in Article XVI, Section 16 thereof.
*287 The majority opinion in the instant suit is predicated "exclusively" upon the Saunders decision. So, if, perchance, I have failed in my attempt to distinguish the Saunders case, then and in that event we should, in my opinion, repudiate that decision as being unsound and ill-advised and give to the words "used exclusively" their common usage connotation.
Although this modern trend toward a destruction of our long established and coveted form of government is not of our making we should place a stumbling block in its path by an appropriate construction of our constitutional and present statutory provisions[8] for "tax exemption" and thus assist the Legislature in its effort to rectify its error rather than aid in the perpetuation thereof by straining to uphold our mistake in the Saunders case.
With few exceptions, the Saunders case perhaps being one, this court traditionally and historically has been a strong champion of free enterprise and of all the individual rights of those who constitute our free society. It led the way in declaring the so-called "Fair-Trade" acts unconstitutional as actually being "unfair" under our form of government. We did not play "footsie" in those cases just because the weight of authority was contra. The majority opinion in the Saunders case states that it follows the weight of authority. Our decisions with reference to the pseudo-designated "Fair-Trade" acts have been commended and followed by other courts of last resort in many of our sister states. It is in my opinion now time for us again to come to the rescue of our government and save it from  wittingly or unwittingly  pursuing a course which will, if continued, destroy "free enterprise".
It has been suggested to me, even by some who protest their fidelity to the principle of "free enterprise" and to "that immortal charter of orderly freedom", that in this case I am making "a mountain out of a molehill". My answer to this acrimonious comment simply stated is "If one American fundamental is prostrated, others in the end will surely fall." Moreover the jolt of a caveat ofttimes produces serious and thoughtful consideration of impending danger which otherwise might continue to be ignored or regarded lightly.
In his concurring opinion Mr. Justice O'Connell quotes from Chapter 26247, Laws of Florida, 1949, as follows: "The City of Tallahassee shall have the power and authority to supply * * * electricity * * * for domestic and other purposes to individuals and corporations outside of the corporate limits of said City * * *". He then states, "Thus the legislature has made the furnishing of electrical power to areas outside its boundaries a municipal purpose of the City of Tallahassee." Upon first blush it would appear that the logic of his position is irrefutable. However, when carried to its ultimate end result it would mean that the City when exercising any of its delegated powers would be, under all circumstances, performing a municipal purpose and therefore tax exempt. We know that this is not true because the City of Tallahassee has under its charter (Laws 1919, c. 8374, § 7) the "power and authority to acquire, take, hold, control and dispose of property, real, personal and mixed * * *" but surely no one would contend that the City could, for instance, acquire a super-market or a complete shopping center and go into competition, tax free, with private enterprises of the same character.
If Mr. Justice O'Connell's position be correct I have only this to say  the majority of the Court in the Saunders case wasted a great deal of time and effort in laboriously seeking a circuitous, if not a devious, route by which to travel in reaching the conclusion expressed therein. The provision of the City charter of Tallahassee which my able colleague quotes is in substance no different from Chapter 9782, *288 Special Act, Laws of Florida, 1923. By said act the City of Jacksonville was authorized to furnish electricity to municipalities and other users of electricity outside the municipal boundaries of said City "in Duval County, and in counties adjacent thereto, * * *". Counsel for the City of Jacksonville cited and relied upon said section of the City charter but this Court did not use it in the Saunders case as a vehicle in reaching its decision. This is understandable because power or authority to do certain specified acts is a far cry from "tax exemption" which is predicated upon "exclusive" usage by constitutional and statutory mandates. I cannot believe that every member of this Court who agreed to the majority opinion in the Saunders case in 1946 could have over-looked, particularly since it was called to their attention, so simple an answer to the question then before the Court. It is my thought that my esteemed associate has indulged in an oversimplification of our problem. I fear we lose sight of the fact that we are actually dealing with the constitutional and statutory law with reference to "tax exemption"[9] rather than lawful power or authority to do certain acts which may or may not be tax exempt in the final analysis.
Furthermore the interpretation which Mr. Justice O'Connell gives to the quoted section of the City charter, in my opinion, renders such section unconstitutional. This is so for the reason that there is no limitation[10] upon the extent of the area outside the corporate limits which the City may serve with electricity "for domestic and other purposes to individuals and corporations". Thus under said construction of the subject section of the City charter said section would be arbitrary, unreasonable, capricious and therefore unconstitutional.
The conclusion which I reach and the determination which I would make would eliminate flagrant, as distinguished from de minimus, unfair competition on the part of government in relationship to private business and preserve, at least to some degree, the true American's concept of free enterprise which over these many years of our nation's existence has been one of the precious gems in the emerald ring of our constitutionally guaranteed freedoms.
Any remarks which I have made herein which may be considered hypercritical of those who reach a contrary conclusion are not so intended. They are written without acerbity and stem only from a firm and unyielding conviction that we should endeavor to assist in extricating our nation from the hapless plight into which it is gradually but definitely drifting.
Mine to be sure is but a "small voice in the wilderness" but I trust that it may be heard and heeded by, at least, some of the freedom loving people of our venerated and envied American form of government before we reach "the point of no return".
ROBERTS, C.J., agrees with conclusion.
NOTES
[1] Art. IX, Sec. 1 and Art. XVI, Sec. 16, Constitution of the State of Florida, F.S.A. relating to property which is or may be exempt from taxation.
[2] Laws of Florida 1919, Ch. 8374, Constitutes the basic charter of the City; as to the particular sections applicable to this proposition see Sec. 113 of Ch. 8374, supra, as amended by Laws of Florida 1927, Ch. 13439 and as further amended by Laws of Florida 1947, Chapter 24910 and Laws of Florida 1949, Chapter 26247.
[3] Chapter 57-788
 "Senate Bill No. 268

"An Act relating to tax exemption of Municipal Public Utilities; amending Section 192.06, Florida Statutes, and amending Section 192.52, Florida Statutes.
"Whereas, municipally owned and operated utilities of the several municipalities now existing in Florida are serving a valid municipal purpose in producing and distributing electrical power and water, and
"Whereas, the property of such municipally owned and operated public utilities serving such municipal purposes cannot be subject to taxation, and
"Whereas, under our system of free enterprise privately owned public utilities, while serving a necessary and useful function in providing utility services for large areas of Florida, should not be subjected to unfair competition from public utilities which are tax exempt where no municipal purpose is being performed, and
"Whereas, both private and municipal utility companies have their proper sphere of operation, Now, Therefore,
"Be It Enacted by the Legislature of the State of Florida:
"Section 1. Subsection (2) of Section 192.06, Florida Statutes, is amended to read: (2) All public property of the several counties, cities, villages, towns and school districts in this state, used or intended for public purposes, including both real and personal property of all fire, hose and hook and ladder companies, except lands sold for taxes for the use of any counties, cities, villages, towns or school districts; and including all property of municipally owned and operated public utilities held and used exclusively for municipal purposes.
"Section 2. Section 192.52, Florida Statutes, is amended to read:
"192.52 Tax exemption, municipal public utilities.  The real and personal property of municipally owned and operated public utilities held and used exclusively for municipal purposes shall not be subject to ad valorem or personal property taxes."
The italicized words in the above act were the only changes made by the 1957 Legislature.
[1] The interpretation given to the Florida Constitution and statutes enacted pursuant thereto by the majority opinion upon the subject question of tax exemption might create a Federal constitutional question.
[2] This is true especially in view of the municipality's inexhaustible power of taxation to meet its legitimate needs.
[3] Said association was declared to be a municipal corporation.
[4] Said limits "are embraced within those of the town of Guilford".
[5] It is the universal rule, so far as I am advised, that a word in a statute should be given its common usage meaning unless the legislative body sees fit, within the act itself, to give to it a different connotation. Gaulden v. Kirk, Fla., 47 So.2d 567, and cases cited therein.
[6] See Lee v. Gulf Oil Corporation, 148 Fla. 612, 4 So.2d 868.
[7] Incidentally, the Saunders opinion was a 4-3 decision which does not give to it a strong position as a precedent or a healthy predicate for the application of the rule of stare decisis.
[8] 1957 Statutory amendments of F.S. Section 192.52 and Section 192.06.
[9] The statute has been revised in toto since the decision in the Saunders case and now plumbs the language of the Constitution.
[10] It is noteworthy to recall at this point that the City charter of Tallahassee grants an "exclusive franchise" to said City to furnish natural gas to users thereof outside the corporate limits but only in the areas adjacent to the City which are within three miles of the City limits on all sides thereof. Although the grant of power to the City to supply electricity to "individuals and corporations" outside the City borders is not stated in so many words to be an "exclusive franchise" it is tantamount thereto because no privately owned utility company can compete with the City if it enjoys tax exemption. It is not enough to say that the City will not abuse the "unbridled" power which is granted to it by the majority opinion. The fact remains that it could do so.